William Ross *vs.* Morton Page.

**Specific Performance—Waiver of Conditions.**

Page and Foley entered into a contract for the sale of land, to be paid for in the proceeds of wheat raised on the land. Balances due on the contract were to draw interest at 8 per cent., payable annually at the office of Morton & Co., where proceeds of wheat crop were also payable. It contained no provision for payment in money. It also provided that the vendee should continuously occupy and improve the land, and farm it in a manner particularly specified in the contract. The contract also contained a provision that no assignment thereof should be valid or binding without written consent from Page. The contract was assigned by Foley, the purchaser, to Ross, who made a payment on the contract in money not derived from crops raised on the land; and Ross went into possession by a tenant, who raised potatoes on the land. Ross tendered the balance due on the contract in money. Page refused to accept the tender, saying that he did not recognize Ross in the transaction. *Held,* under the evidence narrated in the opinion, and for reasons given therein, that Page had waived all violations of the terms of the contract by retaining moneys paid by Ross to Morton & Co. under circumstances charging Page with notice of the conditions under which it was paid.

**Assignment Given as Security no Defense.**

The assignment showed on its face that it was made to secure advances, and it also contained a provision that authorized Page, in positive terms, to convey to Ross when the conditions of the contract were fully complied with. *Held,* that the fact that the assignment was given as security is no defense to Page, and does not entitle him to refuse to convey.

**Demurrer—Defect of Parties.**

The defendant demurred to the complaint because it did not state facts sufficient to constitute a cause of action. There was no demurrer on the ground that there was a defect of parties. The complaint showed on its face that the assignor of the contract to Ross was not a party to the action. *Held,* that the objection that the assignor was not a party was waived, and could not thereafter be raised by answer.

Appeal from district court, Cass county; *Pollock,* J.

Action by William Ross against Morton Page. Judgment for plaintiff, and defendant appeals. Affirmed.

*W. C. Resser (Morrill & Engerud, of counsel), for appellant.*

*J. W. Tilly and Robert M. Pollock, for respondent.*

Morgan, J. The plaintiff brings this action to compel the specific performance of a contract for the sale of 80 acres of land situated in Cass county. The complaint alleges that one Foley entered into a written contract with the defendant, Morton Page, by which Page agreed to sell him said land under the terms mentioned in said contract, and that Foley duly assigned said contract to the plaintiff; that all the provisions of such contract have been fully performed by said

Foley in part, and by the plaintiff as to the balance; that the plaintiff has tendered to the defendant all sums due under such contract, and demanded a deed for such land pursuant to the provisions of the same; that such tender was refused; and that the plaintiff thereafter deposited the amount of such tender in the Fargo National Bank, subject to the defendant's order. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and the same was overruled, and leave granted to serve an answer. The answer was served, and, after admitting the allegations of the complaint as to the contract, amount due, the tender, refusal to accept it, the demand for a deed, and the refusal to deliver it, denies generally the allegations of said complaint, and further alleges that there is a defect of parties defendant in the action, for the reason that Foley, the vendee and assignor of the contract, is not made a party; that said Foley did not assign said contract to the plaintiff absolutely, but as security only; and that the rights of all the parties cannot be adequately determined unless said Foley be made a party. The trial court made findings of fact and conclusions of law in favor of the plaintiff, and ordered that the defendant specifically perform the contract, by executing and delivering a deed of the land to the plaintiff. Judgment was duly entered on said findings, and the defendant appeals from such judgment, and requests a review of all the issues in this court, as provided by section 5630, Rev. Codes, under which the case was tried.

The contract on which the action is based contains the following provisions, among others usually found in contracts commonly called crop or farm contracts: "That the party of the second part hereby agrees with the said party of the first part as follows: That the premises above described are to be occupied and improved continuously by him, and he hereby agrees to farm said premises in a thoroughly first-class and farmerlike manner, according to the usual rules of husbandry, and to the best interest of the said party of the first part; in the year 1898, and prior to the 25th day of October, 1898, to plow back in a thoroughly first-class and farmerlike manner all the land now in stubble, and make the same ready for crop in the spring of 1899; in the year 1899 to sow the said land herein described to wheat, using therefor good, sound, clean seed wheat, free from mustard, Russian cactus, or other noxious weed seeds, and to keep the land clean and free from mustard, Russian cactus, French weed, or other noxious weed seeds, and to use due care and diligence in the selection of said seed wheat, and, if the same contains any smut, to properly bluestone, or otherwise use preventatives against smut in the seed wheat, in the spring, and before seeding." The contract then provides for the performance of the same conditions in reference to the seeding of the land during the year 1900, and all subsequent years, while the contract remains in force. The contract also contains this provision: "No assignment or pledge of this contract by the said party of the second part shall be valid or binding without

the written consent of the party of the first part." The assignment from Foley to the plaintiff contains the following clauses: "And I hereby authorize and empower the said Morton Page to execute and deliver to the said William Ross, or his assigns, a deed of said described premises as soon as the conditions of said contract, or the payment of the purchase price thereof, has been fully complied with. * * * And provided further that, whereas the said William Ross has advanced to me certain moneys with which to make certain payments on said contract to the said Morton Page, this assignment is for the purpose of fully securing to the said William Ross the repayment of such moneys advanced, or any other moneys that he may so advance for or on account of said contract."

The defendant first insists that Foley, the assignor of the contract, was a necessary party in the action, and should have been brought in on an order from the court. It must be borne in mind that the defendant demurred to the complaint, and based his demurrer on the ground alone that the complaint did not state facts sufficient to constitute a cause of action. This ground of demurrer would not reach a defect of parties defendant. *Beyer* v. *Town of Crandon,* 98 Wis. 306; *Tennant* v. *Pfister,* 51 Cal. 511. Section 5267, Rev. Codes, provides that the objection that there is a defect of parties must be taken by demurrer, if the defect appears upon the face of the complaint. If it does not so appear upon the face of the complaint, it may be raised by answer. If the defect of parties appears upon the face of the complaint, and the objection thereto is not raised by a demurrer, the defendant shall be deemed to have waived the objection, except as to the jurisdiction of the court, and that the complaint does not state facts sufficient to constitute a cause of action. Such is the accepted construction of the Codes of other states containing provisions like sections 5267 to 5272, inclusive, of the Revised Codes. See, also, *Sykes* v. *Bank,* 2 S. D. 242, 49 N. W. Rep. 1058, and cases collected in 15 Enc. Pl. & Prac. p. 750. Without admitting or deciding that the question of the defect of parties is properly to be determined on an appeal under section 5630, Rev. Codes, it conclusively appears that all objections to the complaint on that ground were waived by not demurring. The court did not, therefore, err in striking from the answer the allegation as to defect of parties, on motion duly made by the plaintiff.

The defendant contends that the judgment of the district court was erroneous and should be reversed on the evidence, and relies on the following propositions of law as sustaining such condition, which are given about as stated by him: (1) The contract could not be assigned or pledged without Page's consent; (2) Page had the right to insist on Foley's personal management of the farm, and insist on dealing with him alone; (3) the purchase price was not payable in full at any time at the option of the vendee; (4) Page could not be required to accept payment, or any other or different payment, of the purchase price, than that stipulated in the contract, but had the right to have the unpaid portion of the purchase price remain outstanding

as an investment until paid in the manner contemplated by the contract; and (5) the assignment, on its face, was a pledge or mortgage, and did not confer absolute authority on Page to deliver the deed, in view of the fact that it was not an absolute assignment, and that evidence was not admissible in this action to show that it was an absolute assignment, as a matter of fact. It is urged that the contract could not be assigned without defendant's consent in writing, for two reasons: First, because the contract prohibited such assignment, in direct terms; second, because the contract shows by its terms that it was made in reliance on receiving Foley's personal services, skill, and judgment in the management and farming of the land; that a vendor has the absolute right to dictate as to the person to whom he shall sell, and who shall manage his property. On reviewing the evidence, we think it is conclusively shown that the defendant cannot now be heard to raise either of these objections to the giving of a deed by him. As questions of law, we shall not determine the questions as raised, as to do so is rendered unnecessary by the acts and conduct of the defendant in relation to the contract. To understand the ground of our decision, it will be necessary to state the evidence as to what was done by the parties since the contract was entered into, in relation to it. In 1899 Foley farmed the land, and on September 1, 1899, the sum of $806.35, was paid on the contract by him. The evidence does not show whether this sum was from the proceeds of wheat or other crop raised on the land, or not. During the year 1900 the crops on this land were a failure, and amounted to three or four hundred bushels of grain only. There was some flax grown on the land that year, as indirectly appears from the evidence. On October 2d, and before there had been an accounting between Mr. Page and Mr. Foley of the proceeds of the crops grown, and to be applied as payments on the contract, Mr. Foley assigned the contract to Mr. Ross, the plaintiff. At that time Foley and Ross computed the balance due on the contract, over and above a $1,000 mortgage that was on this land. This computation was made with a view of paying the amount due on the contract, less the amount of the mortgage. Mr. Ross intended to pay such sum, assume payment of the mortgage, and procure a deed from Mr. Page. The assignment was drawn by Mr. Tilley, an attorney who was acting for Ross and Foley; and he was given $786 by Mr. Ross, and instructed to pay the same to Mr. Page. Mr. Tilly went to the office of Morton & Co., at whose office payments on the contract were to be made, under the terms of the contract; Mr. Page being a member of such firm of Morton & Co. On arriving at the office of Morton & Co., neither Morton nor Page was present, but a clerk of the firm was present. Mr. Tilly stated the object of his call, and the clerk informed him that Mr. Morton had spoken to him concerning the matter. The clerk then talked with Mr. Morton over the telephone, as then stated by the clerk. While in the office, and before any money was paid, Mr. Tilly stated to the clerk that Foley had assigned the contract to Ross; that Ross was paying this money,

which was largely in excess of the crop raised on this land that year; that he (Tilly) had computed the amount due on the contract, less the $1,000 mortgage; that Ross intended to assume payment of the mortgage, and procure a deed from Page, and had the $786 to pay to Page. All these matters, as stated to the clerk by Mr. Tilly, were repeated by the clerk over the telephone in Mr. Tilly's presence and hearing. At the close of the conversation over the telephone by the clerk, he informed Mr. Tilly that Mr. Morton directed him to receive the money. The clerk did receive it, and receipted for $786 on the contract. When this receipt was written on the contract, the assignment was attached to the duplicate copy of the contract in Mr. Foley's possession, and then in Mr. Tilley's possession. This payment of $786 was receipted for by the clerk as a payment on the contract, and has never been returned or offered to be returned to Ross. The clerk wrote the receipt for this $786 on the contract, and it is in the following words: "October 2, 1900. Received on the within contract $786.00, to be applied in part payment on the within contract. This indorsement is made in duplicate on the copies of the contract held by George Foley and Morton Page. [Signed] Morton Page, by Morton & Co., Agents. K." The clerk also had a duplicate copy of the contract there. While Mr. Tilly was in the office of Morton & Co., he demanded the release of the grain that had been raised on this land in 1900, and taken possession of by them, to apply on the contract; and the clerk gave an order that it be turned over and released to Ross. It is testified to that Page was told in August, 1901, of the assignment of the contract by Foley to Ross, but Page denies having been so told. In the year 1901, Ross rented this land to a person for a money rent. This person summer-fallowed some of the land, and raised a crop of potatoes on part of the land, the value of which was over $1,600. On September 14, 1901, and after the crop had been sold, Ross caused $1,229.25 to be tendered to Page. This sum represented the balance due on the contract. This sum was not realized out of the proceeds of the crop of 1901 on that land. Page refused to accept the tender, saying that he did not recognize Ross in the transaction at all. This sum was immediately deposited in a bank, subject to Page's order if a deed was deposited there in lieu of the money, and the money remains in the bank yet. Under these facts can it be said that Page can now, or could he when this tender was made, rightfully refuse to accept the money offered him, on the ground that Foley had assigned the contract contrary to its provisions, or on the ground that neither Foley nor Ross had carried out the provisions of the contract precisely as therein stipulated? The contract was a contract for the sale of land for a stipulated sum, to be realized out of wheat grown on the land. It contained no provision that the sum unpaid out of the crop could at any time be paid in money. It did not, in direct terms, prohibit such payment in money. Interest on the amount unpaid was to be paid in cash on the 1st day of November of each year, as expressed in one

clause of the contract. The contract also, in the clause providing that Page may enter upon and take possession of the land in case of the nonperformance of the terms of the contract, provides that Page may retain all sums of money that may have been received as rental of the land. But consideration of that phase of the case becomes unnecessary, as the evidence shows that Page has assented to payment on the contract by Ross in money known to him not to have come out of any crop grown on this land. Under the contract, payment of the price of the land and interest thereon was to be made at the office of Morton & Co. This provision says: "The said party of the second part further agrees to pay as compensation for the land afore-said, * * * from the crops grown on the land, * * * the sum of ———, with interest; * * * said interest to be paid annually in cash at the office of Morton & Company." The contract also provided that Page could, at his option, sell the crops after November 1st of each year, if not previously sold by Foley. Under these last provisions of the contract, the office of Morton & Co. must be deemed to have been the place where payments under the contract were to be made. Mr. Page was a witness at the trial, and made no denial of the fact that Morton & Co. were his agents for purposes of receiving payments on said contract, and did not deny their au-thority to receive the money, or to act for him on matters pertaining to the contract. Payments were there received with knowledge that they were made by Ross with money not derived from the land, and with knowledge of the fact that Ross was assignee of the contract. Mr. Tilly testifies that he told Page in August, after this payment was made, that Ross held the contract under the assignment from Foley. Page denies this by saying that he has no recollection of hav-ing been told so by Tilly. Under these circumstances, we hold that Page holds the money charged with knowledge of the facts dis-closed when the payment was made to his agents, and that what was said and done at the time of payment is competent evidence. He cannot retain this money, and then say that he will not recognize Ross in the transaction. He has waived the departure from the stip-ulations of the contract that the land was to be paid for from proceeds of crops of wheat raised on the land, and also the provision against assignment, and cannot be heard to allege that he entered into the contract relying on the personal skill and services of Foley in farming the land, and cannot be heard to say that, until the land was paid for in crops, he may insist that the unpaid balance of the price shall draw 8 per cent. interest until fully paid out of the crop. It would be a most harsh and inequitable construction of the contract to hold that Page still retains the right to insist on a technical compliance with all the provisions of the contract, in view of the fact that he retains the money paid by Ross relying on an assignment of the contract; and Page is chargeable with notice that, when the money was paid by Ross, he did so relying on the assignment. The defendant has not treated the contract as simply an interest-bearing investment un-

less payments are made in wheat. He accepted money payments, knowing that the contract had not been carried out specifically as provided therein. Upon first being informed that the contract had been assigned, and that other crops than wheat were being raised on the land, had he promptly objected, and refused to in any way accept the proceeds or assent to payments or to the assignment, and tendered back the money paid by Ross, another and different question would be presented. But he chose not to object or in any way indicate that he would not abide by the action of Foley in assigning the contract, or in the actions of Foley and Ross in not carrying out the contract in the manner provided in it. Upon receiving notice of violations of the terms of the contract, he should promptly have asserted his rights under the contract, in order that no one might be misled by his silence to their prejudice, by payment of money for doing work on the land, or in any other way. He waited nearly one year after the $786 was paid by Ross before intimating in any way that he would not recognize Ross in the transaction. He was told in August, 1901, that Foley had assigned the contract to Ross and did not object or take any action. He has waived all deviations from the provisions of the contract. *Fargusson* v. *Talcott*, 7 N. D. 183, 73 N. W. Rep. 207; *Boyum* v. *Johnson*, 8 N. D. 306, 79 N. W. Rep. 149; *O'Connor* v. *Hughes* (Minn.) 29 N. W. Rep. 152. In the summer of 1901 he knew that potatoes were being raised on this land by Ross' tenant. He made no objection, but demanded the rent from the tenant; and, upon being informed that Ross had been paid the rent, Page said that he would collect it again, and, unless paid, he would come and dig the potatoes. To no one did he object that the crop raised was not wheat. He wanted the rent, without regard to what crop was raised on the land.

It is claimed that the assignment was made in bad faith, and with intent to prevent Morton & Co. from collecting a judgment out of this land, which judgment was recovered by Morton & Co. against Foley for commissions on sales of real estate, including the land in suit. We find that the evidence sustains a contrary conclusion. The judgment had not been obtained, nor the action commenced, when the assignment was made. That action was tried in 1901. On that trial Ross was a witness, and it is claimed that his testimony in that case conflicts with his testimony in this case. His testimony in this case is corroborated in every material matter as to the issues in this case. We do not think that his testimony in this case has been shown to be false by showing contrary statements on the other trial as to the land involved in this case. He explained such contrary statements as to the land involved in this suit, and we are not convinced of his bad faith in this transaction. Page has received his purchase price in full, or it has been tendered, with accrued interest. It does not seem that he can justly claim more.

It is next claimed that Page was justified in refusing to comply with the demand for a deed, for the reason that the assignment showed on its face that it was made simply as security for advances.

made to Foley; that, if Page had given a deed on demand, Foley could hold him responsible for so doing, as a violation of the contract with him. As already seen, the assignment, in direct language, authorized Page to deed the land to Ross after compliance with the contact. The language authorizing Page to convey to Ross was positive and explicit. Such authority, following, as it does, a clause of the assignment in direct terms selling, assigning and transferring the contract to Ross, would protect Page from any action by Foley if Page shall convey the land to Ross. If Foley has any interest in the conveyance or in the land, and Page deeds to Ross, Ross would hold such interest subject to Foley's claim, and must account therefor. Foley would be subrogated, so far as his interest in the land is concerned, in place of Ross, or Ross must account to him in some other manner. In any view taken of the assignment, whether it be absolute or conditional, the provision that Page was, in absolute terms, empowered to deed to Ross on performance of the conditions of the contract, would protect Page in so doing; and in no event can Foley hold Page responsible in damages for doing just what the assignment authorizes him to do. So far, therefore, as the question of the nature of the assignment is concerned, it is a matter to be settled between Foley and Ross, and does not concern the interests of Page at all.

It follows that the judgment is affirmed. All concur.