(92 N. W. Rep. 826.)

---

OTTO BUCHOLZ *vs.* ARTHUR E. LEADBETTER *et al.*

---

**Cancellation of Contract—Notice.**

> Action to recover possession and to quiet title as against the defendants.  B. was the owner of the fee of the land in question, and on October 2, 1899, entered into a written agreemnt to sell the same to plaintiff.  On March 16, 1901, pursuant to certain provisions in the contract, a notice was sent to the plaintiff in behalf of B., purporting to cancel and annul the contract on the ground of alleged defaults of the plaintiff thereunder.  Evidence examined, and *held*, that the notice of cancellation did not operate to annul the plaintiff's contract of purchase.

**Wrongful Possession of Land.**

> The defendant Arthur E. Leadbetter served an answer to the complaint, wherein he disclaimed any title or right in or to the land, or right to the possession thereof.  The defendant Anna M. Leadbetter entered into a contract with B. on March 22, 1901, whereby she agreed to purchase the land from B., and under which she went into possession of the land at that date, without. the knowledge or consent of the plaintiff.  Evidence examined, and *held*, that she bought with knowledge of the prior rights of the plaintiff as purchaser of the land, and hence wrongfully took possession, and holds possession unlawfully as against the plaintiff.

**Judgment Quieting Title Affirmed.**

> The judgment of the trial court quieting title in the plaintiff and awarding the plaintiff possession is accordingly affirmed.

Appeal from District Court, Cass county; *Pollock, J.*

Action by Otto Buchholz against Arthur E. Leadbetter and Anna Leadbetter.  Judgment for plaintiff, and defendants appeal. Affirmed.

*M. A. Hildreth,* for appellants.

*Benton, Lovell & Holt,* for respondent.

WALLIN, C. J.  This is an action to recover the possession of a tract of land in Cass county, and to quiet the title of said land as between the plaintiff and the defendants.  The action was tried without a jury, and the district court, by its judgment, quieted the title in the plaintiff, and decreed that plaintiff should recover the possession.  Defendants appeal from the judgment, and the entire case is before this court for trial anew.

There is little dispute in the evidence, and the facts which we deem to be decisive of the result in this court are practically uncontroverted.

These facts are as follows: One Joseph M. Bassett of Worcester, Mass., is, and at all times in question was, the owner of the legal title to the land in dispute, and at all times in question one George Phelps, an attorney at law, residing at Fargo, N. D., was the authorized agent of said Joseph M. Bassett, and acted as such in all of the transactions relating to the land which appear in this record. It is undisputed that a written contract of sale of the land between Joseph M. Bassett and the plaintiff was entered into on the 2d day of October, 1899, whereby the plaintiff purchased the land on the so-called "crop payment plan," for an agreed consideration of $10,000. This contract need not be set out at length. It will suffice to say that by its terms the plaintiff, among other things, agreed to perform certain obligations set out in the instrument as conditions precedent to acquiring the fee title. Among such obligations are the following: To pay interest annually on the unpaid purchase price until the whole should be paid; to farm the land in the manner described in the writing; to deliver at an elevator each year one-half of the crops raised on the land, and to take elevator tickets therefor in the name of said Joseph M. Bassett, and deliver the same to Bassett or his agent. It was further stipulated that the plaintiff should not sell any right in the land arising under said agreement without the written consent of said Bassett. It was further agreed that the proceeds of said one-half of the crops so agreed to be delivered should be applied by Bassett—First, in extinguishing unpaid taxes on the land; and, second, in payment of accrued interest; and the balance, if any, was to go to reduce the principal sum due on the purchase money. The writing also authorized the plaintiff to take possession of the land. The writing embraced the following provisions: "Said second party agrees that, in default of the performance of the covenants, terms, and conditions of this contract by him to be performed, or default in the payment of either or any of the said sums of money hereinbefore and by the terms of this contract agreed to be paid, or the interest thereon, or in the default of the payment of said taxes, or any other sum of money hereinbefore agreed to be paid, the principal sum of ten thousand ($10,000), or so much thereof as shall remain unpaid, and interest, shall immediately become due and payable, and may be collected by foreclosure of this contract or otherwise; or, at his election, said first party may at any time upon such default, or at any time thereafter, and upon the failure of said second party to make such payments, or any of them, punctually, and upon the strict terms and times above limited, and likewise to perform and complete all and each of the agreements and stipulations aforesaid strictly and literally without failure or default, declare this contract terminated and forfeited, and may enter and take possession of said land, retaining all sums that have been paid under this contract as rent of said premises to the date of such declaration; it being agreed and understood that time is, and it is hereby expressly declared to be, of the essence of this contract. A notice of the forfeiture and termination of this

contract deposited in any United States post office directed to said second party at Wheatland, North Dakota, with postage thereon prepaid, shall be sufficient declaration of such forfeiture and termination, and shall fully determine this contract, and the same shall thereupon become void, and all rights of the second party hereunder shall utterly cease and determine, and the said premises herein described, and all rights of possession thereto, shall immediately revert to and revest in said first party as absolutely and fully as though this contract had never been made."

The complaint alleges, and the testimony shows, that in the winter of 1899 the plaintiff entered into negotiations with the defendant, Arthur E. Leadbetter, looking to a sale of the land to said defendant, which negotiations resulted in drawing and signing a contract of sale, dated April 7, 1900, whereby the plaintiff agreed to sell the land to Arthur E. Leadbetter upon substantially the same terms as those upon which the plaintiff purchased the land, but at an enhanced price. But plaintiff alleges and shows by testimony that the contract dated April 7, 1900, was never delivered to defendant, Arthur E. Leadbetter, and that the contract was not delivered because of the default of said defendant, who failed to comply with the conditions upon which it was agreed that the same should be delivered, viz., because said defendant failed and neglected to pay over to the plaintiff a certain sum of money as a first payment on the land. But the contract of April 7th has become immaterial in deciding this case, for the reason that the defendant, by his answer, claims no rights under said contract, and explicitly disclaims having any right, title, or interest in the land in dispute, and especially denies that he is in the possession of the land.

The defendant Anna M. Leadbetter answered the complaint, and denied that the plaintiff is the equitable owner of the land, and alleged that the plaintiff's rights in the land had been forfeited and canceled at a date long prior to the commencement of the action; and further alleged that she was the equitable owner of the land, and that she acquired her rights in the land under a certain contract of purchase dated March 22, 1901, a copy of which contract is annexed to and made a part of her answer. The fact of the execution and delivery of the last-mentioned contract is conceded, and it is under this contract that Anna M. Leadbetter claims to have taken possession of the land in April, 1901, and to have remained in possession ever since. The terms of the said last-mentioned contract substantially conform to those in the other two contracts of sale above referred to. The evidence shows that Arthur E. Leadbetter moved upon the land in April, 1900, and that he farmed the land that year, and delivered to said Bassett or his agent the one-half part of all the crops raised that year on the land; but the trial court found from the evidence—and, we think, properly found—that such possession and holding of Arthur E. Leadbetter was unauthorized and wrongful. Nevertheless, it appears that such holding was acquiesced in by the agent of Bassett, and that said agent accepted the crop payment of 1899, and applied the

same as a credit upon the amount due from the plaintiff under his contract of purchase. The testimony shows that Mr. Phelps wrote and plaintiff received the following letters:

"Dec. 26, 1900. Otto Buchholz, Esq., Glyndon, Minn.—Dear Sir: It is over three weeks since I sent you statement of the amount received from the crop on the land you bought from Mr. Bassett, Sec. 13—141—53. There is a balance on this year's interest, which must be paid. That is all I shall ask for this year, but I shall insist on its being paid, and that at once. If you had gone on and farmed the land yourself, there would have been no difficulty about your making this payment on the place. You undertook to make some money by a resale, and Mr. Bassett feels that he cannot be expected to suffer by any mistakes in judgment which you may have made. Bring in the money and fix this up at once."

"January 29th, 1901. Otto Buchholz, Esq., Glyndon, Minn.—Dear Sir: This is the day that you and Leadbetter were to meet here to fix up matters regarding Sec. 13, Empire township. Neither of you are here. Why not? Your letter of the 21st inst. to Mr. Bassett is before me, and a copy of his reply. Let me tell you. You have failed to live up to your contract. Mr. Bassett can and will cancel it, unless you pay the balance of interest and 1900 taxes before Feby. 10th. He will also take the necessary steps to get possession of the land before seeding. If you want the land, come in and settle the interest and pay the taxes. If you don't do so by Feby. 10th, the contract will be canceled, and steps taken at once to get possession of the farm before seeding. This is the last call. Come in with your money or quit."

These letters were followed by a so-called "notice of cancellation," which is as follows: "Mar. 16th, 1901. Otto Buchholz, Esq., Wheatland, N. D.—Dear Sir: You are hereby notified that by reason of your failure to comply with the terms of a certain contract in writing dated October 2nd, 1899, entered into between yourself and Joseph M. Bassett for the sale by said Bassett to you of section thirteen (13), in township one hundred forty-one (141) north, of range fifty-three (53) west, in Cass county, North Dakota, the said Bassett has elected to declare, and hereby does declare, the said contract forfeited and terminated. The respects in which you have failed to comply with the terms and conditions of said contract, and upon which this declaration of forfeiture is made, are as follows, to-wit: First. Failure to enter into possession of said premises, and to plow and prepare the same for crop in the season of 1900. Second. Failure to furnish at your own expense all seed grain, stock, machinery, and labor necessary and essential to carry on and work said land in the season of 1900. Third. Failure to seed such land at such a time in the spring of 1900 as would insure the best results. Fourth. Failure to plow back land in the fall of 1900, and to fit the same for crop the succeeding spring. Fifth. Failure to break, during the season of 1900, that portion of said tract unbroken at the date of said contract. Sixth. Failure to harvest and thresh the grain grown on said

premises in the season of 1900. Seventh. Failure to deliver to said Bassett or his authorized agent, George H. Phelps, at any elevator, one-half of all grain of every description grown on said premises during the season of 1900, as provided in said contract. Eighth. Failure to protect the growing timber on said premises as provided in said contract. Ninth. Failure to pay taxes on said premises assessed for the year 1900. For the foregoing reasons said contract is hereby declared determined and void, and all rights which you may have acquired thereunder ceased and determined, and possession of said premises is hereby demanded."

It is convenient to inquire at this point whether this notice of March 16, 1901, operated in law to terminate and forfeit the plaintiff's contract of purchase. That is was intended by its writer to have that effect is clear, not only from its language, but from the fact that only a few days after it was sent, viz., on March 22, 1901, a new contract was entered into, whereby Joseph M. Bassett, by his agent, undertook to sell the land in dispute to the defendant Anna M. Leadbetter. Reverting to the notice of cancellation, it appears that the same embraced nine grounds or reasons, which were respectively advanced as justifying the cancellation of the contract. None of the grounds stated had reference to the nonpayment of interest. All of the grounds, except the ninth and last, referred either to the land, or to the manner of cultivating or protecting the same, or to the crop payment, and all of the grounds dealt with the year 1900. As to these grounds Mr. Phelps testified as a witness, and his testimony, as we construe it, is to the effect that the plaintiff omitted to personally go upon the land and cultivate the same in 1900, and that he omitted to individually turn over one-half the crop, etc. But Mr. Phelps did not testify or claim that the land was not cropped in fact in 1900, or that one-half of the crop was not turned over to Bassett, as required by plaintiff's contract of purchase. Such is not the contention. Upon such a state of facts we quite agree with the trial court in its holding that all of the grounds or reasons of forfeiture, except the last, which will be discussed separately, are insufficient, and furnish no valid reason in the law for forfeiting the contract. It has been seen that Mr. Phelps, as the agent of Bassett, was at all times advised that Arthur E. Leadbetter was farming the land in 1900, and, well knowing this fact, the crop or its proceeds belonging to Bassett was received by him, and applied upon the plaintiff's contract. Upon this point Mr. Phelps testified as follows, referring to the crop of 1900: "After the threshing was done in the fall, I commenced urging him to make payments on the contract,—that is, Mr. Buchholz. I recognized no person but Mr. Buchholz during the time that Buchholz was in possession of the land, as I understood it." This can only mean that while Arthur E. Leadbetter was, to the knowledge of Phelps, in fact farming the land in the year 1900, Mr. Phelps understood that Buchholz was in legal possession, and was engaged, through Leadbetter, in executing his contract of purchase. But another fact, we think, militates strongly against the theory that the

notice of March 16th was effectual as a cancellation of the plaintiff's purchase contract. The letter of December 26, 1900, makes reference to a "statement of the amount received from the crop on the land," referring to the crop of 1900, and also contains a demand of interest for 1900, coupled with a statement as follows: "That is all I shall ask for this year." This letter was written at the close of the year 1900, and after Bassett's share of the crops had been received by him, and the proceeds thereof credited upon plaintiff's contract of purchase. Except as to the item of an unpaid balance of interest, the letter was silent as to any defaults or omissions of duty on plaintiff's part arising under the contract of purchase. In this letter no mention is made of either or any of the nine grounds of forfeiture set forth in the notice of cancellation. In fact, the letter of December 26th, when fairly construed, imports that Basset had no grounds of complaint against the plaintiff in the premises, except as to the one matter of interest. Referring to the unpaid interest, the letter declares, "That is all I shall ask for this year." As we construe the entire letter, its meaning is that on December 26, 1900, Basset had no grounds except the matter of interest upon which he could cancel plaintiff's contract, or, if such grounds existed, that Bassett did not desire at that time to insist upon any other grounds, but, on the contrary, would waive the same; and it is our opinion that the plaintiff might well assume, from the terms of this letter, that Basset intended not to press any claims of forfeiture, if any he had, other than the one claim for interest. The notice of cancellation was not mailed until March 16, 1901. This date was approximately the date at which farming operations for the season of 1901 would begin, and this date also was from four to six months after all of the alleged defaults in 1900 occurred, if in fact any did occur. We think this notice came too late to accomplish the purpose which was sought to be accomplished by it. Courts of equity regard all forfeitures with disfavor, and the rule is well settled that a party who seeks to avail himself of the right to declare a forfeiture must act with promptness. In *Fargusson* v. *Talcott, 7* N. D. 183, 189, 73 N. W. Rep. 207, 209, this court said: "When a party stipulates that he will give written notice of his election to take advantage of a breach, where time is of the essence of the agreement, an unwarrantable delay in giving this notice is equivalent to an assurance that as to that default the provision with respect to time has been waived." In the case at bar there is, as has been seen, not only great delay in declaring the forfeiture, but a letter had been written to plaintiff, which practically informed him that no grounds of forfeiture existed except as to the particular matters mentioned in the letters. The letter of January 29, 1901, upon its face, proceeds upon the assumption that the plaintiff's contract of purchase was in force on January 29, 1901, but it embodies a threat to the effect that the contract would be canceled unless the taxes of 1900 and the unpaid balance of interest were paid before February 10th. But this letter, like that of December 26,

1900, contains no reference to any default in farming the land, or in turning over one-half of the crop of 1900, nor does the letter complain of the fact that plaintiff had not, in person, carried on the farm during that year.

The ninth ground of forfeiture, as claimed in the notice of March 16th, is, "Failure to pay taxes on said premises assessed for the year 1900." The trial court, in its decision of the case, commenting upon this feature of the notice, used language which very well expresses the views of this court. The trial court said: "The ninth cause for forfeiture was for 'failure to pay taxes on said premises assessed for the year 1900.' My recollection is that the evidence shows that Mr. Phelps paid the taxes on January 31, 1901, the amount paid being $76.73. These taxes were thus paid by Mr. Phelps for Mr. Bassett prior to the time of the notice of forfeiture, the notice being dated March 16, 1901. There is some pretty strong language in this contract (Exhibit B) with reference to the rights of Mr. Bassett to forfeit the contract, and the question arises whether Buchholz's failure to pay these taxes would warrant a forfeiture. It appears by a letter dated January 29, 1901, and addressed to Otto Buchholz (Exhibit 8), that Mr. Phelps used the following words: 'You have failed to live up to your contract. Mr. Bassett can and will cancel it unless you pay the balance of interest and the 1900 taxes before February 10th.' The question naturally arises whether there was not a permission for Mr. Buchholz to wait until that time in which to pay the taxes. Another very serious question arises, and that is this: Whether, under the contract, Mr. Buchholz did not have up to February 1st in which to pay the taxes. Taxes are not delinquent until February 1st, and it would appear that, equitably speaking, the one obligated to pay the taxes should have up until the first day when, under the law, taxes become delinquent, in which to pay them. * * * * There is another reason which it appears to me negatives the idea that this is a proper cause for a forfeiture. A reference to the contract shows the following: That Buchholz agreed to pay the taxes after the year 1899, and in case of failure he authorized the first party to pay the same, 'and agrees that all sums so paid shall attach thereto and become a part of the principal sum payable under the terms of this contract; that all sums so paid shall draw interest at the rate of 7 per cent. per annum from the date of payment and shall be deducted from the payment as hereinbefore agreed.' So that under this contract the moment that Bassett paid the taxes they became a part of the principal, just as much as though they had been reckoned in the principal at the time of the making of the contract. If, under the facts of this case, Bassett could not forfeit for the failure to pay any part of the principal, then he would have no rights of forfeiture for nonpayment of taxes, because the taxes paid became a part of the principal. If the act of A. E. Leadbetter in turning over the amount of crop required during the year 1900 was, in contemplation of law, the act of Buchholz, then Bassett, having received his share of the grain due under the contract that year, would be

regarded in law as having waived his right to a forfeiture of the contract." Upon the matter of the alleged forfeiture the trial court concludes as follows: "It therefore follows that the contract was not canceled, and is in full force at this time." For reasons already appearing, we shall, without further elaboration upon the facts, accept the views of the trial court, so far as we have quoted the same, as the views of this court upon the question of the alleged cancellation and forfeiture of the plaintiff's contract of purchase.

There is no claim made under the evidence or by counsel that any attempt was ever made to cancel the plaintiff's contract by reason of any act or omission of the plaintiff arising under the contract in the year 1901. Nor do we see how any such claim could be consistently urged, in view of the fact that Anna M. Leadbetter was put into the actual possession of the land by Bassett in the spring of 1901, and has remained in possession up to the time of the trial of the action. From what has been said, it must follow that the plaintiff was, at the time this action started, and still is, the owner of an equitable estate in the land under his contract of purchase, and as such owner is entitled to the possession of the land as against the defendants, neither of whom, under the evidence, have any interest or estate in the land. If it is true, as between the plaintiff and Joseph M. Bassett, that plaintiff's contract of purchase remains in full force, it cannot, at the same time, be true that the defendant Anna M. Leadbetter is the owner of any equity or right in the land, unless she entered into the contract of purchase (that of March 22, 1901), in ignorance of the existence of plaintiff's rights under his earlier contract. No claim is made that she entered into her contract with Bassett in ignorance of the fact that plaintiff had previously purchased the land of Bassett. She, as appears from the whole case, had actual notice and full knowledge of such previous purchase. Nor is the contention made by the appellants' counsel that she was misled by anything said or done by the plaintiff, or that, in consequence thereof, she had been lead to buy the land in ignorance of plaintiff's prior rights therein. The utmost which can be urged by defendant Anna M. Leadbetter by way of excuse or explanation of her purchase of the land is that she was informed by Mr. Phelps, at a time when plaintiff was not present, that at the time she signed her purchase contract he (Phelps) had canceled plaintiff's contract of purchase. On cross-examination Anna M. Leadbetter, who was a witness in her own behalf, testified: "Q. You never came down to the office to see Mr. Phelps about buying the land, did you? A. No, sir. Q. And it was Mr. Leadbetter's suggestion that you buy it, was it not, to you, the first you thought of it? A. Yes. Q. And the contract, Exhibit 11, was siged at your house, wasn't it; that is, on this section 13? A. Yes. Q. The land in question in this action? A. Yes. Q. You talked over with Mr. Phelps, at that time, the condition of the title, some, did you not? A. We talked about it. I do not remember just exactly what we said. Q. You

knew, however, at that time, that Mr. Bassett had previously sold it to Mr. Buchholz? A. Yes. Q. And you knew that there had been no lawsuit to cancel that contract, or anything of that kind? A. I believe it stated right in the contract. Q. Stated what? You knew, or Mr. Phelps told you, at the time that he was selling this land, undoubtedly, that he had given Mr. Buchholz notice of a letter of cancellation, canceling his contract? A. Yes. Q. He stated that by reason of that written notice which he had served on him that he was free to sell the land to you? A. Yes, sir. Q. And you knew that that was the method he had adopted of canceling Mr. Buchholz's interest in the land? A. Yes, as near as I can recollect. Q. You have left the carrying out of the contract largely to your husband, have you not? A. Yes." This testimony shows beyond all question that in entering into the contract of March 22d Anna M. Leadbetter relied wholly upon the assurances of Mr. Phelps that he (Phelps) had, by a letter of cancellation addressed to the plaintiff, annulled all rights which plaintiff had acquired under his contract of purchase. It does not appear that either of the defendants saw the letter of cancellation, or a copy of it, or that either at any time asked to see it, or inquired as to the grounds upon which it was claimed that the plaintiff's rights were forfeited. We have seen that the letter of cancellation, in its legal effect, wholly failed to cancel or cut off the rights of the plaintiff in the land. The abortive nature of the notice of cancellation could, with due diligence, have been discovered, and hence the defendant Anna M. Leadbetter is chargeable with notice that the letter of cancellation was without effect, and did not operate to forfeit or terminate any of the plaintiff's rights under his previous contract of purchase.

The judgmet of the district court must be affirmed. All the judges concurring.