(101 N. W. 919.)

---

### CATHERINE TIMMINS v. PETER RUSSELL.

Opinion filed Nov. 30, 1904.

**Vendor Must Act Promptly on Default if He Would Cancel Contract.**

1. Before the owner of land who has agreed to convey the same by a contract of sale can cancel the contract for noncompliance therewith, he must proceed promptly to declare his election to cancel on discovery of defaults, and, if he does not proceed promptly to do so, he will be deemed to have waived his right to insist that the vendee has lost his rights in equity on account of failure to comply with his contract.

**Waiver of Right.**

2. Evidence in the case considered, and found to show a waiver by the vendor of his right to cancel the contract.

Appeal from District Court, Sargent county, *Cowan,* J., sitting by request.

Action by Catherine Timmins against Peter Russell. Judgment for defendant, and plaintiff appeals.

Affirmed.

*Barnett & Reese,* for appellant.

A waiver of a stipulation in a contract, to be effectual, must be with knowledge and intent to waive. 28 Am. & Eng. Enc. Law, 527; Bennecke v. Continental Mut. Ins. Co., 105 U. S. 359, 26 L. Ed. 990; Dodge v. Minneapolis Roofing Co., 14 Minn. 39;

Boynton v. Brayley, 54 Vt. 92; Langdon v. Pence, 99 U. S. 578, 25 L. Ed. 420; Fargusson v. Talcott, 7 N. D. 183, 73 N. W. 207.

The vendor acted promptly and notice was seasonably given. Fargusson v. Talcott, supra; Shuman et al. v. Marks, 28 N. W. 927; Gardels v. Kloke, et al., 54 N. W. 835.

*J. E. Bishop* and *Chas. E. Wolfe,* for respondent.

It is only in actions against, or proceedings by or against executors, heirs at law or next of kin, in which judgment may be entered against them as such, that evidence of transactions or conversations are incompetent. Riley v. Riley, 9 N. D. 580, 84 N. W. 347.

The incompetency was removed by cross-examination on the same subject; this opened the door to the whole transaction. 3 Jones on Evidence, 792; Michigan Savings Bank v. Estate of Buller, 98 Mich. 381, 57 N. W. 253; Boyd v. Conshohocken Mill, 149 Pa. St. 363; Foster v. Hess, 59 N. W. 193; Smith v. Smith, 101 N. C. 461; Clift v. Moses, 112 N. Y. 426; Hamilton v. Hamilton, 10 R. I. 538, Lawrence, Admn'r, etc. v. Vilas, 20 Wis. 381; Penny v. Croul, 87 Mich. 15; Prescott v. Lambert, 19 Col. 7; Beech v. Bennell, 50 Me. 587.

Conditions in a contract for the sale of land, which provide for a forfeiture, may be waived, and unless strictly insisted upon and diligently pursued will be considered as waived. Fargusson v. Talcott, supra; Boyum v. Johnson, 8 N. D. 306, 79 N. W. 149; Pier v. Lee, 14 S. D. 609, 86 N. W. 642.

MORGAN, J. This action was brought for the cancellation of a contract for the sale of real estate, and for the immediate possession of such real estate, on the alleged ground that the defendant has failed to comply with the terms of the contract of sale. The contract was entered into between plaintiff's husband, since deceased, and defendant, on the 11th day of August, 1898. The husband's estate was duly probated, and the land involved in this suit was adjudged by the county court to be conveyed to the plaintiff, who is now the owner thereof, subject to the defendant's rights and possessions under the contract. The plaintiff claims that the defendant has forfeited his rights to the land by failure to comply with the contract in the following particulars: (1) Failure to crop said land in seasonable time; (2) failure to harvest said crop in seasonable time and in a husbandlike manner; (3) failure to crop the required number of acres of wheat on said land during the season of 1902; (4)

failure to deliver to plaintiff the one-half of the wheat raised on said land during the year 1900; (5) failure to pay the taxes on said land for the year 1900. These are the defaults alleged in the complaint as a basis for a cancellation of the contract. The answer of the defendant is a general denial, but alleges that the plaintiff has waived the right to insist on a cancellation of the contract by his agreement with the defendant as to payment of the taxes in the year 1900, and by retention by plaintiff of the one-half of the wheat raised in the year 1900 and other years. The district court found for the defendant, and dismissed plaintiff's action. From the judgment of dismissal plaintiff appeals, and demands a trial de novo under section 5630, Rev. Codes 1899.

At the trial it appeared that the contract in suit was made by the defendant with one Robert S. Timmins, since deceased; that his estate was duly probated, and his real and personal property duly distributed by the county .court to his heirs, and that the land involved in this suit was by said court ordered conveyed to the plaintiff, and that the administrator has been discharged and released as administrator; that defendant went into possession under the said contract, and has remained in possession ever since. It further appeared on the trial that the contract sued upon was indefinite in its terms so far as the number of acres to be cropped in wheat each year was concerned, and indefinite in its terms as to the number of acres of crop plaintiff was to receive the one-half of during each year. As to this indefiniteness of the contract, it stated in three places that 300 acres were to be sowed each year, and in one place that 250 acres were to be sowed. Without extrinsic evidence, it would be impossible to say what number of acres the defendant was obligated to sow each year. But the evidence shows that there were but 258 acres broken on the place, and the contract contains no provisions obligating the defendant to do any breaking on the land. So that it is clear the parties could not have intended that 300 acres were to be sowed to wheat each year. Further, the plaintiff's testimony is directed solely toward establishing that 250 acres were not cropped to wheat each year. Then, too, the answer alleges that 250 acres were cropped to wheat in 1902. It is therefore clear that the parties to the contract intended to contract in reference to 250 acres as the number of acres to be sowed each year. No objections or motions were made at the trial directed towards reformation of the contract in this particular. The com-

plaint was treated, so far as the answer is concerned, as claiming defaults by reason of not sowing 250 acres of wheat, and alleged that 250 acres were sowed in 1902. Under such circumstances we will treat the contract as the parties have done, as a contract to sow 250 acres of wheat each year, and to turn over one-half of the wheat raised each year in payment of the purchase price—10,000 bushels of clean wheat. This renders it unnecessary to determine the questions raised whether defendant could give testimony in regard to conversations with the deceased as to what was said by them as to the number of acres to be sowed to wheat each year, and whether such testimony was admissible under a general denial. The record, therefore, presents two questions for determination: (1) Was the defendant in default as to the terms of the contract on March 27, 1902? (2) If in default, was such default waived by the plaintiff by her acts and conduct prior to that date?

The evidence establishes, without material contradiction, the following facts pertaining to these questions: In the year 1899 defendant did not sow 250 acres of wheat, and sowed only about 230 acres. With knowledge of this fact, the one-half of the wheat raised was accepted by plaintiff without objection, or any protest to indicate that the contract was not being complied with. In 1900, defendant sowed only about 220 acres of wheat, and about 38 acres of oats, flax and rye. The wheat raised was not marketable on account of being injured by continued rains, but plaintiff made no objection or protest that the required number of acres of wheat was not sowed, although she had knowledge that such was the fact. In 1901 other grain was raised on the land than wheat, and less than 250 acres of wheat raised thereon. The plaintiff accepted her share without objection. The evidence also shows that during each year prior to 1902 the defendant had not fully complied with the contract in regard to sowing 250 acres of wheat on the land in question, and that no objection was made by the plaintiff to such noncompliance with the contract, although she knew that the contract was not complied with. In the fall of 1901 the defendant plowed about 200 acres of land preparatory to raising a crop thereon in the year 1902. On March 27, 1902, plaintiff served notice on defendant that she elected to cancel the contract for failure on his part to comply with it. In the notice no specific grounds are set forth as constituting the failure to comply with the contract, but simply a general allegation of default. On May 14th, defendant was again

informed by verbal notice that he was in default, and that the plaintiff elected to declare the contract null and void, and that an action would be commenced unless he surrendered the premises to plaintiff. When this last notice was given, defendant had nearly completed the cropping of the land. The action was commenced on August 14, 1902. In 1902 defendant sowed but 215 acres of wheat on the land in question. Plaintiff, after notice, has not accepted one-half of this crop. Defendant deposited the same in an elevator, subject to plaintiff's order. It is claimed by plaintiff that the undisputed fact that but 215 acres of wheat was sowed in 1902 warrants a decree canceling the contract for noncompliance therewith. The contract provides that failure to comply with any of the provisions of the contract shall render it void at the election of the party of the first part, and that time is of the essence of the contract. Was the plaintiff warranted under these circumstances in declaring the contract at an end and canceled on March 27, 1902? We think not.

First, as to the alleged failure to sow 250 acres each year. The evidence ·shows that this provision of the contract had not been complied with in any year since the contract was made. lt shows also that no objection was ever made that the contract had not been complied with by reason of sowing a less number of acres of wheat than was specified. Each year the plaintiff's share of the crop had been accepted, and the defendant permitted to proceed with preparations for the crop of the next year, without plaintiff claiming a forfeiture on the ground that the contract had not been complied with in this respect. During the fall previous to March, 1902, plaintiff accepted her share of the, wheat without objection. Thereafter, and in the fall of 1901, defendant plowed over 200 acres of this land, with the intention of farming it the coming year. If plaintiff had grounds for declaring the contract at an end, it should have been done when the default occurred, or when plaintiff became cognizant of it. She had as much knowledge of defaults in the fall of 1901 as in the spring of 1902. No new ground for declaring the contract annulled, so far as the manner of farming was concerned, could have arisen between the fall of 1901 and the spring of 1902. If defaults existed in the fall of 1901, they were waived by accepting the crop from the defendant without objection. Advantage could not be taken of such defaults in March, after the defendant had expended labor in preparing for the next year

in reliance on the fact that he would be continued in possession under the contract. The same may be said of the verbal notice of May 14, 1902. The defendant had then sowed over 200 acres to wheat, and was not through seeding at the time the notice was given. No new default had arisen at that time which was not available to plaintiff in the fall of 1901. This is an equitable action, and plaintiff should not prevail unless she has acted promptly on discovery of defaults, and elected to cancel the contract before defendant has been misled by silence and inaction to his detriment by preparing the land for seeding another year. The language of this court in Fargusson v. Talcott, 7 N. D. 186, 73 N. W. 207, is pertinent to this case: "Whether defendants violated their contract in those years is immaterial, for it is undisputed that they were permitted by plaintiff to farm the land in 1895, and this was a waiver of all prior breaches." The opinion in that case further says: "But the power which this option places in the hands of one party to an agreement, after the default has occurred, over the other party, is so great and is so liable to abuse, if the one who wields it is allowed much latitude as to time in making and manifesting his election to give or withhold the notice required to be given by the contract, that a court of equity should exact of him the utmost good faith, fairness, and promptness in deciding that he will terminate the agreement by such notice. * * * It is always possible for him to act without delay. His silence is calculated to induce the belief that he does not intend to insist upon his strict rights."

Conceding that defendant was in default in the fall of 1901, the plaintiff cannot now avail herself of such default, as she has waived it by not acting promptly in declaring that she elected the contract to be at an end and canceled. See, also, Boyum v. Johnson, 8 N. D. 306, 79 N. W. 149; Merriam v. Goodlett (Neb.) 54 N. W. 686; Pier v. Lee, 14 S. D. 609, 86 N. W. 642; Gaughen v. Kerr (Iowa) 68 N. W. 694; Ross v. Page, 11 N. D. 458, 92 N. W. 822; Bucholz v. Leadbetter, 11 N. D. 473, 92 N. W. 830. These cases are authority for holding that the plaintiff in this case has waived the right to cancel her contract and to demand possession of the premises for any defaults occurring during 1901 and prior years. No defaults available to plaintiff under the circumstances existed on March 27th, when she elected to cancel the contract. Contracts permitting forfeiture are harsh, and courts are careful

not to enforce such forfeitures, unless the plaintiff appears without fault, and the defendant's default is not at all attributable to plaintiff's conduct or acquiescence. The defendant did not pay the taxes for 1899. Plaintiff paid them on December 3, 1900. The evidence is conflicting as to whether plaintiff paid them under a special agreement with defendant to do so, or not. Whether she did so or not is immaterial, as such a default in the terms of the contract was waived by plaintiff not promptly availing herself of her rights to cancel the contract on that ground. Boyum v. Johnson, supra.

The remaining grounds urged as justifying a cancellation of the contract relate to defendant's failure to properly put in and harvest the crop. It is claimed that he was a poor farmer so far as his work was concerned, and that he did not put the crop in or harvest or thresh it in season. So far as these matters relate to years prior to 1902, they are disposed of under the principles and authorities decisive of the claim that less than 250 acres were seeded each year. They were waived. So far as they relate to 1902, it remains only to say that no grounds for cancellation existed on March 27th. The defendant had not plowed 250 acres in the fall of 1901, but plowing in the fall was not required under the contract, and there is no satisfactory showing that plowing in the spring is necessarily evidence of poor farming. There is competent evidence, by those acquainted with defendant's methods and work, that he is a good farmer. But we rest the decision on the ground that, when the notices were given in the spring of 1902, no defaults existed, and that the attempted cancellation of the contract was without foundation so far as facts are concerned, and cannot be sustained as a matter of law.

In regard to the crop of 1900, the evidence shows that the crop was spoiled by rains after it was cut. The wheat was threshed by defendant and attempted to be marketed, but was rejected as not marketable. Defendant testifies that he offered it to plaintiff after explaining that it had been rejected at the markets, and that plaintiff told him to keep it and use it for feed. Defendant was permitted without objection, and without suggestion from plaintiff or any one else that he was responsible for the loss of this crop, to go on and farm the land during the year 1901, and to prepare for farming the land in 1902. It was too late to claim this as a ground for declaring the contract forfeited in March or May, 1902.

If this ground ever existed as a valid one for canceling the contract, it was not claimed promptly, and was therefore waived.

We discover no valid ground for declaring the contract canceled, and the judgment is affirmed. All concur.

(99 N. W. 48.)

NOTE—To effect a cancellation of contract for sale and purchase of land, the vendor must act promptly. Kicks v. State Bank of Lisbon, 12 N. D. 576, 98 N. W. 408; Smith v. Detroit & D. Gold Min. Co. et al., 97 N. W. (S. D.) 17; Fargusson v. Talcott, 7 N. D. 183, 73 N. W. 207; Boyum v. Johnson, 8 N. D. 306, 79 N. W. 149; Pier v. Lee, 14 S. D. 609, 86 N. W. 642.