# Youngman *et al. versus* Linn *et al.*

1. If the consideration for land has not been paid, the general doctrine is that the purchaser, unless he has agreed to run the risk of the title, may defend in an action for the purchase-money, by showing defect of title in whole or in part, with or without covenant of general warranty, or of right to convey or for quiet enjoyment, and whether a deed has been executed or not.

2. Where there is a known defect, but no covenant or fraud, the vendee can avail himself of nothing, but where there is a covenant against known defect, he shall not detain purchase-money unless the covenant be broken.

3. Mensch in 1840 sold to Hughes the exclusive right to mine, &c., on part of his land at a named rate per ton for the ore : in 1851 Mensch sold his whole tract' to Youngman, and took a mortgage for the purchase-money, part of which was payable on a day named, "upon consideration that the title to the land * * be by that time assured and confirmed," particularly the above agreement " be rescinded, otherwise not to be payable till the title be fully assured ." A *scire facias sur mortgage* was issued. May 2d 1864, and tried December 22d 1864. *Held,* that no presumption of abandonment of the right under the agreement by non-user had arisen either at the commencement of the suit or at the trial.

4. In 1854 assignees of Hughes brought ejectment against Youngman for part of the premises and failed. The record of this suit was offered and received to show Youngman's admission that the agreement was no incumbrance, and that the Supreme Court had decided that the agreement was of no validity. *Held,* that the record was *res inter alios acta* and inadmissible.

ERROR to the Court of Common Pleas of *Union county.*

This was a *scire facias sur mortgage,* issued May 2d 1864, by James F. Linn and Levi Sterner, executors, &c., of Nicholas Mensch, deceased, against John Youngman and Jesse M. Walter.

[Youngman *v.* Linn.]

On the 1st of April 1851 Mensch sold to Youngman and Walter a tract of land. Part of the purchase-money was secured by the mortgage in suit, of which $6000 was to be paid " three years after the death of said Nicholas Mensch, *and upon the further consideration that the title to the land this day sold and conveyed by the said Mensch to the said John Youngman and Jesse M. Walter be by that time assured and confirmed, and particularly an agreement between the said Mensch and one H. Hughes, dated the* 17*th of November* 1840, *be rescinded, otherwise not to be payable until said title be fully assured;*" the interest, however, thereon, was payable yearly, and has been paid.

Mensch died October 4th 1854. The agreement referred to granted to " Hughes, his heirs or assigns, the exclusive right and privilege of searching for, digging, raising and carrying away from off the lands hereafter described," being part of the tract conveyed to defendants, " all the ore," &c. This agreement through various assignments passed to Clement & Masser, who, November 28th 1854, brought an ejectment against the defendants " for a certain limestone quarry containing about three acres," part of the land included in Hughes' agreement. In that suit there were a verdict and judgment for the defendants, which was affirmed by the Supreme Court (4 Wright 341). The record of this judgment was offered in evidence by the plaintiff and received, and exception taken by the defendants. There was no evidence of any use having been made by Hughes or his alienees of the rights granted by the agreement. By direction of the court the jury found for the plaintiff $5635.80.

The errors assigned were the admission of the evidence and the instructions to the jury as contained in the specifications, viz. :—

2. " It is now some twenty-four years since this agreement was made, and they (Hughes and his alienees) have lain by so long that they have forfeited any right they might have had under the agreement ; this, then, being the case, and this agreement having become null and void, or rather a presumption having arisen from lapse of time that this agreement was released or given up, the plaintiffs have in effect complied with their stipulation in the condition of the bond, and are entitled to recover the balance of this bond, to wit, $5400 and interest from April 1st 1864."

3. " The facts as exhibited in the cause amount to substantial compliance with the proviso, and, therefore, the plaintiff is entitled to recover."

4. " The title, as appears in this case, has already become assured to the defendants."

5. Refusing to instruct the jury, " that plaintiffs having neither averred or proved that the agreement of the 17th day of November

1840, between Holker Hughes and Nicholas Mensch, is rescinded, cannot recover."

6. Refusing to answer the defendants' 4th point; "That no evidence having been given by plaintiff of non-user, they cannot rely upon the limitation of twenty-one years elapsing since the date of the agreement, as fulfilling their obligation to have the Holker Hughes agreement rescinded, and the title to the lands assured and confirmed to the defendants."

*John B. Linn*, for plaintiffs in error, cited Clement *v.* Youngman, 4 Wright 341; 1 Bouvier 289, 291, 287; Vanhorne *v.* Dorrance, 2 Dall. 317; 2 Greenl. Ev., pp. 230, 231; Cassell *v.* Cook, 8 S. & R. 287; Patterson *v.* Juniata Bank, 4 W. & S. 42; Maguire *v.* Howard, 4 Wright 393; McCormick *v.* Crall, 6 Watts 212; 2 Story's Eq. J., § 698–700; Ryan *v.* Mackmath, 3 Br. Ch. 15, 16, note; Altemus *v.* Campbell, 9 Watts 28.

*G. F. Miller*, for defendants in error, cited Clement *v.* Youngman, 4 Wright 341; Harlan *v.* Lehigh Navigation Co., 11 Casey 287; Shontz *v.* Brown, 3 Id. 123.

The opinion of the court was delivered, May 15th 1866, by

WOODWARD, C. J.—This was a *scire facias* upon a purchase-money mortgage. The defence was an outstanding interest or incumbrance in one Holker Hughes, to whom Mensch, the vendor, had made articles of agreement on the 17th November 1840, conveying to said Hughes, his heirs or assigns, the exclusive right and privilege of searching for, digging and carrying away from part of the land included in the subsequent sale to Youngman and Walter, all the iron ore and limestone on said land, and timber for working the mines or quarries and roads to and from them, and ground for landings and deposits of dirt, and for necessary houses and buildings; Hughes to pay 20 cents a ton for all the clean ore he should take. Holker Hughes assigned this contract to Napoleon Hughes, who recorded it on the 30th September 1841. Napoleon Hughes conveyed his interest by deed to Jacob Barnhart, April 17th 1852, who conveyed by deed of 8th June 1852 to Ira T. Clement and Jacob B. Masser. These deeds were duly recorded.

The sale of Mensch to Youngman and Walter was made on 1st April 1851 of 300 acres in consideration of $18,000, part in cash, and the balance secured by bonds and mortgage. All the bonds have been paid except one conditioned for the sum of $6000, which was payable three years after the deed of Mensch, "*provided the title to the land this day sold and conveyed by the said Mensch to the said Youngman and Walter be by that time assured and confirmed, and particularly an agreement*

*between the said Mensch and one H. Hughes, dated* 17*th Novem-
ber* 1840, *and recorded in Union county in Deed Book J. P.*
397, *be rescinded, otherwise not to be payable until the said title
be fully assured,* as per bond, said bond bearing interest from
this date, the said interest to be payable yearly and every year
to said Nicholas Mensch and his assigns."

I have taken the words of the condition from the copy of the
mortgage before us except the word " time," which, I presume,
was omitted by mistake in copying the original instrument.   The
same condition, in very nearly the same words, is in the bond.
Mensch died October 4th 1854, and his executor sued out the
mortgage to enforce the payment of the bond on the 4th May
1864, nothing whatever having been done to rescind the agree-
ment made with Hughes.

It was upon this ground (the non-extinguishment of that agree-
ment) the defence planted itself.

On the trial of the cause the plaintiff offered, and the court
admitted against the objections of the defendants, the record of
an ejectment brought in 1854 by Clement and Masser against
Youngman and Walter " for a certain limestone quarry contain-
ing about 3 acres," understood to be part of the premises men-
tioned in the mortgage.   A verdict and judgment for defendants
were entered in 1856, which were affirmed in this court in 1862:
see 4 Wright 341.

In view of the judicial construction which the agreement of
Mensch with Hughes received in that case, and the lapse of time
the court charged that the agreement was released or given up, the
plaintiffs have in effect complied with their stipulation in the con-
dition of the bond, and are entitled to recover.

In Pennsylvania the general doctrine has prevailed ever since
the case of Steinhaur *v.* Witman, 1 S. & R. 438, that if the
consideration-money for land has not been paid, the purchaser,
unless it plainly appear that he has agreed to run the risk of the
title, may defend himself in an action for the purchase-money by
showing that the title was defective, either in whole or in part,
whether there was a covenant of general warranty or of right to
convey or quiet enjoyment by the vendor or not, and whether the
vendor has executed a deed of conveyance for the premises or
not.   This, indeed, was precisely Judge Kennedy's mode of
stating the doctrine in Roland *v.* Miller, 3 W. & S. 393.   In
Murphy *v.* Richardson, 4 Casey 292, we brought together the
cases in which this doctrine has been somewhat qualified, and we
adopted Judge Gibson's summary of the authorities as found in
Lighty *v.* Shorb, 3 Penna. R. 447, to the effect that where
there is a known defect, but no covenant or fraud, the vendee
can avail himself of nothing, being presumed to have been com-

[Youngman *v.* Linn.]

pensated for the risk in collateral advantages of the bargain ; but where there is a covenant against the known defect, he shall not detain purchase-money unless the covenant be broken. The cases that are scattered through our books are all referred to in the cases above mentioned, and I will not encumber my page by a repetition of the references.

It is observable that the defence here cannot be treated as a mere equity, as in Beaupland *v.* McKeen, 4 Casey 130, but that it is a strictly legal defence that springs out of the very terms and conditions of the mortgage. The defect in Mensch's title was known to his vendees, for Hughes's deed or agreement was on record, and is precisely recited in the mortgage. Whether any covenant was inserted in the deed to them, we are not informed, but the condition in the mortgage amounts in effect to a covenant on the part of the vendor that Hughes's right under the agreement of 17th November 1840 shall be extinguished before the $6000 bond shall be payable. By the very terms of the instrument this bond was to be paid three years after the death of the vendor, *provided*, that is, on condition of farther assurance, and especially on condition that the Hughes agreement be rescinded. If no farther assurance, and especially if that agreement be not rescinded, then, though the interest on the bond is to be paid annually, the principal is not to be demandable. Such is the plain legal import of the condition, and it was precedent to the right of the executors to recover, if not to sue, for the balance of the purchase-money. They stand like a vendor under a covenant against a known defect after breach of the covenant, and their breach is alleged as a legal defence against their action. So far as appears to us, neither Mensch in his lifetime nor his executors since his death ever put forth an effort to rescind the agreement. The ejectment of Clement and Masser was *res inter alios acta*, to which the executors were not a party, and the effect of that suit was not to rescind the agreement. It was a mistake, therefore, to admit it in evidence. The only ground then upon which the court's opinion can rest is, that the rights of Hughes's alienees under the agreement were barred by non-user. Let us see how this is :—

From the date of the agreement to the institution of the ejectment was fourteen years, without any adverse possession of the land for *mining purposes ;* a period quite too short to bar the right or to raise a presumption of abandonment. But for the purposes of the present suit we are to treat the agreement as the parties treated it, as a subsisting encumbrance in 1851, eleven years after its date. Nothing can be more express than their recognition of the existence of the agreement at the date of their papers on the 1st April 1851, and they contemplated its continued existence until a period three years after Mensch's death. He died in 1854,

2 P. F. SMITH—27

[Youngman *v.* Linn.]

and three years thereafter would bring the agreement down to 1857, when it was to be rescinded as a condition precedent to the payment of the money now in suit.   Between that date and the institution of this suit was only seven years, and such a period could give birth to no such presumption as the learned judge set up.    On the contrary, the parties have treated the agreement as an encumbrance existing down to so recent a date as absolutely to exclude all legal presumptions of its extinguishment.    And it was a very substantial encumbrance; one that would materially impair the marketableness of the title.   If the case stood upon executory articles of sale and purchase, no chancellor would compel the vendee to accept and pay for a title with so substantial an interest outstanding.   It is more than a cloud upon the title; it is a conveyance of valuable rights in the land, be they corporeal or incorporeal.   And the positive engagement that these rights should be extinguished before this balance of purchase-money should be demanded, makes this a much stronger case than Nicol *v.* Carr, 11 Casey 382, or Murphy *v.* Richardson.

The judgment is reversed, and a *venire facias de novo* awarded.