ANDREW J. BOWNE, Plaintiff and Respondent, *v.* C. C. WOL-COTT, Defendant and Appellant.

**1. Public Lands; Title After Location With Scrip and Before Patent.**

Where a party locates government scrip upon government land at the proper local land office, and where, at the time, the land so entered was subject to entry with such scrip, and the entry was accepted by the officers of the local land office, and the patent certificate issued to the entryman, such entryman holds the full equitable and beneficial title to such land, but until the patent actually issues the naked legal title remains in the United States.

**2. Same; Grant by Entrymen With Covenant of Seisin.**

Where, in such case, the grantee of the entryman, prior to the issuance of the patent, again conveys the land by warranty deed, with covenant that he is "well seized in fee" of said land, such covenant of seisin is broken, because the grantor is not seized of the legal title.

**3. Same; Same; Damages For Breach of Covenant.**

But such deed does convey to the grantee the full equitable and beneficial title to said land; and until some paramount or hostile title is in some manner asserted, or the grantee is in some manner disturbed

in his possession, such breach is a mere technical breach, for which the grantee can recover nominal damages only.

(Opinion Filed February 4, 1891.)

*A*PPEAL from district court, Grand Forks county; Hon. WILLIAM B. McCONNELL, Judge.

J. F. McGee, for appellant, maintained: That the title was complete in the grantor before patent, and that there was, therefore, no breach of the covenant of seizure; but if otherwise then (the grantee having obtained the full equitable and beneficial title, being in possession and not offering to re-convey,) only nominal damages were recoverable.

W. H. Standish and J. H. Bosard, for respondent, filed no brief.

BARTHOLOMEW, J.    This was a trial to the court on an action brought on a covenant of seisin in a deed.    The unquestioned findings of fact show that prior to January 10, 1882, the land in controversy was the property of the general government; on that date one Bailey located what is known as "Sioux Half-Breed Scrip" upon said land at the local land office of the United States at Grand Forks; that the land was at that time subject to entry with such scrip; that the entry remained intact upon the records of the land department, but no patent has ever been issued by the general government for the land; that said entry was duly accepted by the local land officers at the Grand Forks land office; that subsequent to the acceptance of said location Bailey transferred the land to Goodhue, who entered into possession of and platted the same into town lots and blocks, and by warranty deed conveyed the property described in the complaint, and delivered possession of the same to the defendant, Wolcott; and that in March, 1883, in consideration of the sum of $600, Wolcott conveyed the land by warranty deed to the plaintiff, which deed contained the covenant set forth in the complaint, which is as follows:    "And the said C. C Wolcott, party of the first part, for himself, his heirs, executors and administrators, does covenant with the party of the second part, his heirs and assigns, that he is well seized in fee of the land

and premises aforesaid, has good right to sell and convey the same, in manner and form aforesaid;" that under such deed plaintiff at once entered into possession of said property, and has never been in any manner interfered with or disturbed in such possession, and no paramount or hostile title to said premises has ever been asserted against plaintiff's title or possession. On these facts a judgment was rendered against defendant, and in favor of plaintiff, for the consideration money, with interest from the date of conveyance, with costs and disbursements. From this judgment defendant appeals to this court.

We first inquire whether these facts show a breach of the covenant of seisin. There is no allegation or intimation in the complaint that any irregularity or informality in any way exists in the location of the scrip, and it is expressly found that the land was subject to entry with such scrip. In speaking of the condition of the title to lands that have been properly entered, but to which no patent has been issued by the general government, the supreme court of the United States, in Carroll v. Safford, 3 How. 441, uses this language: "It is said that the fee is not in the purchaser, but in the United States, until the patent shall be issued. This is so technically at law, but not in equity. The land in the hand of the purchaser is realty, and descends to his heirs, and does not go to his executors or administrators. In every legal and equitable aspect, it is considered as belonging to the realty. Now, lands which have been sold by the United States can in no sense be called the property of the United States. They are no more the property of the United States than lands patented. So far as the rights of the purchaser are concerned, they are protected under the patent certificate as fully as under the patent. Suppose the officers of the United States had sold a tract of land, received the purchase money, and issued the patent certificate, could it be contended that they could sell it again, and convey a good title? They could no more do this than they could sell land a second time which had been previously patented. When sold, the government, until the patent shall issue, holds the mere naked legal title of the land in trust for the purchaser, and any second purchaser would take the land charged with the trust." This rule has been repeatedly affirmed,

and we are not aware that it has ever been departed from by the federal supreme court. As the facts in this case come fully within the language used by the court in the above quotation, it follows that the defendant, at the time he executed the conveyance in this case, was the owner of the full equitable and beneficial title to the land, but that the naked legal title was held by the United States. We hold that the covenants in the deed can be satisfied with nothing less than the conveyance of the absolute title, both legal and equitable. Lord Ellenborough, in Howell v. Richards, 11 East, 633, said: "The covenant of title is an assurance to the purchaser that the grantor has the very estate in quantity and quality which he purports to convey." The legal title being in the government, defendant did not convey to the plaintiff complete equitable, legal, and alienable title to the land, and hence the covenant of seisin was broken.

The more difficult question in this case, however, pertains to the correct rule of damages for such breach. It has been repeatedly announced, both in the text-books and in the decided cases, that the measure of damages for the breach of the covenants of seisin was the consideration paid, with interest. In numberless cases this statement stands unqualified. But an examination of the cases will show that in each instance a paramount title had been asserted, or that the grantee took nothing by the conveyance for the reason that the grantor had no interest to convey. Very many of the cases where this language has been used were cases where the grantee, who had been evicted by paramount title, was seeking to recover the actual value of the premises at the time of the eviction. The courts of this country, however, and generally, though not uniformly, of England, have limited the recovery to the consideration paid, and interest, irrespective of the extent to which the value of the premises has been augmented, either through an expenditure of money, or by reason of the favorable situation of the premises. The rule that is generally adopted in the United States is very clearly stated by Kent, C. J., in Statts v. Ten Eycks' Ex'rs, 3 Caines, 111, and the English rule is well stated in Mayne, Dam. (2d Ed.) 147. The general rule as thus stated was applied by the court in this case. Appellant contends that this case

comes without the general rule, and requires the application of different principles. In this we think he is correct. The hardship of the rule that would allow a grantee to recover the full purchase price with interest and still retain the land, has been very frequently discussed and regretted by courts. In this case respondent seeks to avoid the hardship of the rule by claiming that, if plaintiff recovered the full amount of the purchase money and interest, thereby the conveyance from the defendant to the plaintiff becomes a nullity; that defendant receives back his land, plaintiff recovers his consideration, and thereupon the parties are left in *statu quo.* This doctrine has been sometimes announced by the courts, but it is strictly limited to one class of cases, and those are cases wherein there has been a total breach of the covenant—wherein nothing, in fact, passed to the grantee; and while it would be true that the grantor could not aver against his own deed, yet the grantee could do so, and if the grantee avers that there has been a complete breach of the covenant, and that nothing in fact passed to him by the conveyance, and if such averments are verified by the decision of the court and thereby become matters of record, the grantor can thereafter take advantage of the record, and can re-enter, and the grantee will not be heard to set up the conveyance by way of estoppel. See Porter v. Hill, 9 Mass. 34; Foss v. Stickney, 5 Greenl. 390. In this case, however, there is no allegation that no interest passed by the deed On the other hand the complaint is pregnant with the thought that some estate did pass to the grantee, and the findings show that the full equitable title —everything but the mere legal title—passed to the grantee, that possession passed, and that such possession has remained undisturbed, and no hostile title has ever been in any way asserted. The record thus made would negative the idea that the grantee took nothing. It is perfectly clear that he took a very valuable interest. No reconveyance is tendered. The judgment on such a record would be no authority for the grantor to re-enter; so that in this case it is entirely clear that whatever estate was conveyed to the grantee still remains in him, and will remain in him after final judgment in this case. Hence he will have the full beneficial interest in the land, and also whatever

damages he may recover in this case. The inequity of allowing him to recover the full purchase money, and at the same time retain the land, is apparent on statement.

It has been held, when a grantee tenders a reconveyance when there has been a technical breach of the covenant of seisin, that the proper rule of damages is the entire purchase price, with interest. See Frazer v. Supervisors, 74 Ill. 282; Kincaid v. Brittain, 5 Sneed, 119; Recohs v. Younglove, 8 Baxt. 385. But in the absence of such tender the authorities are clear that for a mere technical breach the grantee is not entitled to recover the full amount of the purchase price. In Ore Co. v. Miller, 41 Conn, 112, the court say: "The general rule is, in actions upon contracts, that the plaintiff shall recover the actual damages sustained. An action for the breach of the covenant of siesin is not an exception to the rule. It is generally true that in such cases the actual damage sustained is in fact the consideration paid, and interest, because the party takes nothing by his deed. It is in its inception, and continues to be, a nullity. But if the party takes anything by his deed, directly or indirectly, by its own force, or by its cooperation with other instruments or other circumstances, whether it be the entire thing purchased or a part of it, the value must be considered in considering damages." To same effect, see Kimball v. Bryant, 25 Minn. 496; Cochrell v. Procter, 65 Mo. 41; 2 Suth. Dam. 265; Mayne, Dam. 143; Smith v. Hughes, 50 Wis. 620, 7 N. W. Rep. 653; Hencke v. Johnson, 62 Iowa, 555, 17 N. W. Rep, 766.

From these views it is apparent that the learned trial court adopted an improper rule of damages, as that court evidently deemed the consideration price and interest, irrespective of actual damage, to govern in cases of the breach of these covenants. It is claimed, however, that this rule receives some support from our statute. Section 4584, Comp. Laws, is as follows: "The detriment caused by a breach of the covenant of seisin, of right to convey, of warranty, or of quiet enjoyment, in a grant of an estate in real property, is to be deemed (1) the price paid to the grantor, or, if the breach is partial only, such proportion of the price as the value of the property affected by the breach bore, at the time of the grant, to the value of the whole prop-

erty." It is said that the breach in this case, such as it is, extends to the whole property, and that under the statute the damages would be the entire consideration. We do not, however, consider the statute as laying down an ironclad rule of damages that cannot be changed or varied. When the statute says that the detriment for the breach of the covenants is "deemed to be," we understand it to mean that primarily, and in the absence of proof of especial circumstances, that would be the general rule, but that the rule as thus announced is subject to the same variations as the common-law rule that existed prior to the enactment of the statute.

It appears in this case that appellant first conveyed to respondent by quit claim deed, under which respondent went into possession. Subsequently, but without any new or further consideration, on respondent's request, appellant executed and delivered the warranty deed containing the covenant on which this action was brought. Appellant contends that the warranty deed was without consideration, and hence the covenant was of no binding force. The findings give us no definite information as to why the second deed was executed. It may be that the original contract of sale contemplated a warranty deed. There is nothing in the findings to negative that idea, and it is hardly to be presumed that a party would have assumed the liabilities arising upon these covenants unless under some obligation to do so. In the present state of the record, we cannot hold that there was any error on this point. By reason of the error in the assessment of the damages, this case is remanded to the district court of Grand Forks county, with instructions to reduce the amount of the judgment to six cents damages. Appellant will recover costs of this court. Modified and affirmed. All concur.

CORLISS, C. J., having been of counsel, did not sit in the hearing of the above case; Judge TEMPLETON, of the first judicial district, sitting by request.