# CARL WESTERLAND v. THE FIRST NATIONAL BANK OF CARRINGTON, NORTH DAKOTA, a Corporation, and G. S. Newberry.

(L.R.A.—, —, 164 N. W. 323.)

**Contracts — money paid under — action to recover — insanity — incompetency — evidence — lapse of time — remoteness of evidence — prejudicial error.**

1. Where one brings an action to recover money paid under a contract, on the ground that at the time of the making of the contract and the note and mortgage, which were parts of the same transaction, he was insane, evidence that at a point of time four years or more subsequent to the time of the making of the contract, he was adjudged insane by the board of insanity, is inadmissible and incompetent, and too remote to prove his mental condition at the time of the making of the contract; and when admitted over the proper and timely objections of the defendant is prejudicial and reversible error, for which new trial will be granted.

**Contracts — capacity to make — determination of — true test — knowledge of nature of contract — at time made.**

2. Capacity to make a contract is not determined by whether one has much or little intellect. The true test is, Had the party who seeks to avoid the contract on the grounds of incapacity by reason of alleged insanity, sufficient mental capacity to know the nature of the contract and the terms thereof? if he had, he may be required to perform it.

---

NOTE.—On admissibility, on issue as to mental condition, of evidence that one has been adjudged insane, or has been confined in an insane asylum, see annotation of this case in L.R.A.—, —.

Contracts — disaffirmance of — money paid — action to recover back — should
  be timely brought — ratifications.

   3. Disaffirmance of contracts and actions brought to recover money paid there-
under should be timely, otherwise, long delay tends to prove ratification.

Opinion filed July 9, 1917.   Rehearing denied August 23, 1917.

Appeal from the District Court of Foster County, *J. A. Coffey,* Judge.
Reversed.

*Edward P. Kelly,* for appellants.

"The test of whether a person is competent to make a deed is that he
should be qualified to do that particular business rationally; not, on
the one hand, that he should be capable of doing all kinds of business
with judgment and discretion, nor, on the other, that he should be
wholly deprived of reason so as to be incapable of doing the most
familiar and trifling work." Nelson v. Thompson, 16 N. D. 295, 112
N. W. 1058; Jackson ex dem. Cadwell v. King, 4 Cow. 207, 15 Am.
Dec. 354.

"Nonexpert witnesses are competent to give their opinion as to the
mental condition of testatrix in a proceeding contesting the probate of
the will on the ground of unsoundness of mind at the time of making
the will." Halde v. Schultz, 17 S. D. 465, 97 N. W. 369; State v.
Leehmam, 2 S. D. 171, 49 N. W. 3; People v. Conroy, 97 N. Y. 62;
State v. Pennyman, 68 Iowa, 216, 26 N. W. 82; Territory v. Hart,
7 Mont. 489, 17 Pac. 718; Webb v. State, 5 Tex. App. 608; Hardy v.
Merrill, 56 N. H. 227, 22 Am. Rep. 441; State v. Klinger, 46 Mo. 228.

"A court is not authorized to submit to a jury an issue as to which
there is no evidence, and such submission by the court constitutes re-
versible error." Independent School Dist. v. Merchants' Nat. Bank, 68
Iowa, 343, 27 N. W. 255; Dondero v. Frumveller, 61 Mich. 440, 28
N. W. 712; Whitsett v. Chicago, R. I. & P. R. Co. 67 Iowa, 150, 25
N. W. 104; Sheffield v. Eveleth, 17 S. D. 461, 97 N. W. 367.

The question is whether or not the person was qualified to do the
particular business in hand, rationally. Nelson v. Thompson, 16 N. D.
295, 112 N. W. 1058; 1 Whart. & S. Med. Jur. §§ 2, 74; Titcomb v.
Vantyle, 84 Ill. 371; Baldwin v. Dunton, 40 Ill. 188; Hovey v. Chase,
52 Me. 305, 83 Am. Dec. 514; Osmond v. Fitzroy, 3 P. Wms. 129,
24 Eng. Reprint, 997; Shelford, Lunatics, 27.

*T. F. McCue,* for respondent.

Findings of the county court and commissioners of insanity are proper evidence of the matters therein found.

Insanity, when once established by competent and lawful authority, is presumed to continue. 4 Wigmore, Ev. § 2530.

"A condition of mental disease is always a more or less continuous one, either in latent tendency or in manifest operation. It is therefore proper, in order to ascertain the fact of its existence at a certain time, to consider its existence at a prior or subsequent time." 1 Wigmore, Ev. § 233; Shailer v. Bumstead, 99 Mass. 112.

Evidence of mental condition before and after the act is admissible 16 Am. & Eng. Enc. Law, 614.

The evidence clearly shows fraud and deceit, and that an undue advantage was taken of a weak and incapable mind. Respondent did not know, nor did he understand, the meaning of the transaction. Comp. Laws 1913, § 5849.

"The paramount and vital principle of agency is good faith, for without it the relation of principal could not well exist." Morris v. Bradley, 20 N. D. 649, 128 N. W. 118.

The proof shows conclusively that respondent was insane prior to the transaction here involved, and the presumption is that insanity continued at least until the contrary is clearly shown. 16 Am. & Eng. Enc. Law, 614, and cases cited; Dawson v. Wisner, 11 Iowa, 6.

Grace, J. The complaint, among other things, alleges that the defendant Newberry was the cashier of the first National Bank of Carrington, of which plaintiff was a customer and transacted his financial business. That is, such customer was in the habit of counseling with Newberry with reference to such financial business, and did confide in and take the advice of said Newberry in financial matters. That Newberry on the 28th day of September, 1909, advised the plaintiff that it was plaintiff's debts that were causing him to worry and producing his ill health, and that to relieve the same (debts) he should sell his farm. At said time Newberry produced a writing of which the following is a copy:

"For $1 in hand paid by G. S. Newberry I hereby grant on him an exclusive option for sixty days on purchase or sale of the following lands:

South $\frac{1}{2}$ of 22, northwest $\frac{1}{4}$ of 26, all in 147, R. 65, including windmills, buildings and all other improvements on the farm. Price $23 per acre net to me. . Terms $3,000 cash, balance five annual payments at 6 per cent interest. Good paper. The privilege of withdrawing the option by notice in writing inside of thirty days is reserved. All plowing done to be paid for at $1.25 per acre and possession of buildings retained until April 1, 1910."

The plaintiff further alleges that at the time of the signing of said option the plaintiff did not know that said option provided for an exclusive sale, but plaintiff believed that such writing was necessary in order for the said Newberry to obtain a purchaser for said land. The plaintiff further alleges that at the time of signing such contract his mind was in such condition that he did not know what he was doing, or realize the binding effect of said writing,—all of which was known to Newberry and of which Newberry took advantage at said time. The plaintiff further states that on the 2d day of November, 1909, the defendant Newberry told the plaintiff he was ready to carry out said contract for the purchase of said land and buy the same himself, and demanded of plaintiff a deed to said land, advising said plaintiff at said time that he, the defendant, would place a mortgage upon the premises for the purpose of paying the plaintiff $3,000 cash provided in said option. Plaintiff refused to make such deed. Newberry demanded the sum of $480 by way of damages. Plaintiff further alleges that defendant threatened suit against the plaintiff for said amount of money, and alleges that on account of his mental condition he was put in fear, and caused to believe that if he did not settle with said Newberry he would lose his farm. The plaintiff then executed a note for $860, which also covered other amounts owing by the plaintiff to the bank, which was secured by a mortgage on the land in question. Plaintiff alleges that at the time said mortgage and note were paid by the bank at Barlow the plaintiff was insane, and was afterwards placed in the insane asylum at Jamestown, North Dakota. Plaintiff alleges that the offer which the defendant made to purchase said farm was not in good faith, and that the whole transaction was a conniving scheme for the purpose of defrauding the plaintiff of said money. That at the time the plaintiff's mind was deranged, all of which was well known to the defendant.

The defendant Newberry for his answer makes, first, a general

denial, and further by way of defense alleges that on the 28th day of September, 1909, the plaintiff solicited the defendant to purchase or procure the purchase of certain real estate then the property of plaintiff, and for a consideration did make, execute, and deliver to the defendant the option as hereinbefore set forth, which option was on the 28th day of October, 1909, assigned by the defendant to his wife, Mary G. Newberry. The answer further alleges that more than thirty days from the execution and delivery of said option, on the 2d day of November, 1909, the plaintiff again called upon the defendant and asked to withdraw said option, and that by mutual agreement of the parties and the consideration of the surrender of said option, the plaintiff agreed to pay, and did pay, to the defendant the sum of $1 per acre, amounting to the sum of $480. The answer further denies all allegations of fraud.

The facts in the case are as follows: The plaintiff was the owner of 480 acres of land. On the 28th day of September, 1909, he granted an option to the defendant for sixty days, which gave the said Newberry the right to find a purchaser to said land, or purchase the same himself, within the sixty-day period. The plaintiff also had a reservation in such option of withdrawing the same by notice in writing inside of thirty days. The plaintiff did not withdraw the option within thirty days, and did not attempt to do so until after the thirty-day period had expired. The plaintiff had transacted business for quite a long period of time prior to the date of the option contract, with the First National Bank of Carrington, of which Newberry was cashier. After receiving such option the defendant assigned the same to his wife. The plaintiff desired after the thirty-day period had expired to withdraw the option and cancel the same, which Newberry refused to do unless he was paid the sum of $480, which was agreed to by the plaintiff, and a note for $860 executed, which included, among other items, the $480, which was secured on the land in question.

The first assignment of error by the defendant is one in which he complains that the court erred in receiving in evidence over the objection of appellant exhibits F, G, H, I, J, K, L, and M inclusive, which exhibits constituted the record of the board of insanity for Foster county in the matter of the insanity proceedings against Carl Westerland, the plaintiff in this case, which proceedings as to the insanity of

the plaintiff were had on the 28th day of June, 1913, a period of time of four years subsequent to the date of the transaction complained of and involved in this suit. This record concerning the insanity of the plaintiff was offered at the very commencement of the trial of the case. The defendant made proper objections to the introduction of such records because of their incompetency, irrelevancy, and immateriality, which objection was overruled by the court, and such records were received in evidence.

The question presented is quite a novel one, and is as follows: Where it is claimed by the plaintiff that at the time of the execution of the contract he was insane and had no capacity to execute such contract, is it competent to introduce testimony that four years subsequent to the date of such contract the plaintiff was declared to be insane by the board of insanity of the county in which he resided? Adverting to the question of insanity, an inquisition finding that a person is insane at the time of such inquiry, such finding is not evidence that he was insane at a previous date, and especially is this true where the date is long prior to the date of the inquiry.

Southern Tier Masonic Relief Asso. v. Laudenbach, 5 N. Y. Supp. 901; Rippey v. Gant, 39 N. C. (4 Ired. Eq.) 443. Such finding by the insanity board is no presumption of insanity at an earlier date. Lilly v. Waggoner, 27 Ill. 395; Small v. Champeny, 102 Wis. 61, 78 N. W. 407; Koons v. Benscoter, 2 Kulp, 451. The admission of such testimony is only competent to prove the incapacity of the person to have charge of his property at the time of the inquiry as to the sanity of the person examined; and where such person is found to be insane on such inquiry and examination, it is no evidence of insanity at a prior date, but is evidence only of the insanity of the person examined when the adjudication was made. Burnham v. Mitchell, 34 Wis. 134. The only possible theory upon which such testimony could be admissible would be, where there was competent testimony adduced showing a continuance of the insanity from the date the act was done, or in case of a contract, from the date the contract was made, for all the succeeding interval of time down to the date of the inquiry and adjudication of insanity, and such continuance of such insanity during all the interval from the time of the making of the contract to the adjudication of insanity is shown by a clear preponderance of evi-

dence, of such a nature that it would strongly tend to prove the continuance of such insanity. Notwithstanding such connecting proof, the adjudication of insanity is not competent proof of insanity at a prior date, and the records of such adjudication of insanity of a certain date are entirely inadmissible, incompetent, irrelevant, and immaterial to prove insanity at a prior date. There is still another objection to the admission of the exhibits of the adjudication of the insanity of the plaintiff, in that the insanity was at a very remote time from the time of the making of the contracts in question, and because of such remoteness were inadmissible and incompetent, the time between the making of the contracts and the adjudication of insanity being a period of more than four years. As to remoteness of the testimony in this class of cases, see Dickinson v. Barber, 9 Mass. 225, 6 Am. Dec. 58; Harden v. Hays, 14 Pa. 91. A party alleging insanity has the burden of establishing it by a preponderance of evidence, and the ordinary rules of evidence as to admissibility, materiality, competency, and relevancy apply as in other cases.

The pivotal question in a case such as the one at bar is the capacity to contract with reference to property or its conveyance at the time the contract or conveyance was made. If a person at the time of making the conveyance or contract has sufficient mental capacity fully to comprehend the nature and effect of the act, the conveyance is valid. Willwerth v. Leonard, 156 Mass. 277, 31 N. E. 299; Parker v. Marco, 76 Fed. 510. It may be said to be a sound principle of law, to make a binding contract does not require a very high order of intellect. While the contracts of a lunatic or an idiot, except for necessaries, are of no binding force upon him, yet, if a man possess sufficient mental capacity to understand and know what he is doing, to know the nature of the contract, the terms thereof, and the time of its continuance, he may be required to perform it, unless the contract is unfair, fraudulent, or dishonest, when he might be relieved from the performance thereof, but most likely upon other grounds than insanity. The law does not presume to make a distinction between much and little intellect. Stewart, Legal Medicine, § 155. Sanity is always presumed to exist until the contrary appears.

The testimony in this case is quite voluminous. Much of it relates to the business transactions of Mr. Westerland prior to the time of the

execution of the contract in question. There is testimony that he transacted business with other business men in the vicinity. There is some testimony tending to show that Mr. Westerland worried about his debts; that he at times had crying spells; that he at times made disturbances with his family. There is also testimony that he used intoxicating liquors and sometimes to excess, and that at times he kept intoxicating liquors at home. All such testimony was proper to be considered by the jury, and to be weighed by them in assisting them in determining whether or not at the time of the execution of the contract in question the plaintiff was of sufficient mental capacity to enter into the contract which he did. The main question to be determined in the case is whether or not the plaintiff, Westerland, had sufficient capacity and intellect, and knew what he was doing, at the time he made the contract; and the business transactions of plaintiff not too remote from the time of the making of the contract, his general conduct, his actions, eccentricities, if any, his habits,—all may be shown by competent testimony as bearing upon his capacity to execute the contract in question at the time it was executed. The contract in question was one which it was lawful to make. If the plaintiff, Westerland, had capacity to make it at the time which he did make it, he is legally bound by the consequences of his making the contract.

Another question which should be taken into consideration is that a disaffirmance of a contract should be timely and the same disaffirmed within a reasonable time, or if money has been paid thereunder, an action brought to recover such money within a reasonable time after the contract is disaffirmed, otherwise long delay tends to show a ratification.

We are of the opinion that the admission of the records of the county court of Foster county which showed the result of the inquiry at which plaintiff was adjudged insane, which inquiry was some four years or more subsequent to the date of the making of the contract in question and the note and mortgage given in settlement, was too remote to be competent evidence; that it was inadmissible to prove the insanity of the plaintiff at a point of time four years or more prior thereto, and the admission of the same was prejudicial and reversible error. The judgment is therefore reversed and a new trial granted.

ROBINSON, J. (dissenting). In this case cashier Newberry appeals to this court from a verdict and judgment against him for obtaining from the plaintiff $480, and interest, by fraud and undue influence. By some smoothness he obtained from the plaintiff a one-sided land listing document, which is a fraud on its face. It is in this form:

September 28, 1909.

For $1 in hand paid by G. S. Newberry I hereby grant him an exclusive option for sixty days on purchase or sale of the following lands:

South ½ of 22, northwest of 26, all in 147, R. 65, including windmills, buildings, and all other improvements on the farm. Price $23 per acre net to me. Terms $3,000 cash, balance five annual payments at 6 per cent interest. Good paper. The privilege of withdrawing the option by notice in writing inside of thirty days is reserved. All plowing done to be paid for at $1.25 per acre and possession of buildings retained until April 1, 1910.

Carl Westerland.

Witnesses:
    H. H. Steffens,
    J. W. A. Fisher.

The plaintiff was a poor, illiterate, hard-working Norwegian, of weak and unsound mind. He called on his banker, who posed as his confidential friend, and heard his tale of woe, and advised him to get away from trouble by selling his land and by giving his friend, the banker, an exclusive right to sell it for him. The banker presented his listing document and said to the weeping and distracted man: Sign there; and he signed it. Then the banker assigned the document to his innocent spouse, and put it on record so as to cloud the title of plaintiff's land. Of course when the illiterate Norse came to think it over, the signing of that document caused him days and nights of worriment. Then he came to his banker friend and asked leave to withdraw the document, and was told that it had been transferred to some person (whom the banker declined to name); that the holder would give it up for $480, and so the banker kindly took a mortgage on the land and advanced the $480 to himself. In time the mortgage was paid; the maker went

insane, went to the insane asylum, got out, and recovered a verdict and judgment inviting the banker to refund his $480, and interest. How strange it is that any person should think of appealing such a case to the highest court of justice. Of course the claim is made that in signing the document the Norse knew just what he was doing, and that he was not mislead or deceived, but the claim is futile. The document is a fraud on its face. No sane man signs such a thing, only when he is deceived. It is needless to review the testimony showing the weak mental condition of the plaintiff, who finally committed suicide, and the way in which he was induced to sign the paper and to mortgage the land to pay $480, and interest, without receiving any value whatever. It is high time for bank cashiers and others to stop trying to get money or property from poor people by such sharp and smooth practices. In a way it is worse than theft, because it is more likely to prey upon the mind and to drive one to insanity and suicide. The judgment should be affirmed.