[File No. 6322.]

AUGUST ANDERSON, Appellant, v. FRED J. OLSON et al., Respondent.

(260 N. W. 407.)

Opinion filed April 2, 1935.   Rehearing denied April 27, 1935.

*Acker & Shafer,* for appellant.

*Kaldor & Kaldor,* for respondent.

Burr, J. This is an action to quiet title to land—plaintiff claiming he is the sole owner, and demanding that he recover possession and have judgment against defendant Olson for the value of the use and occupation during the year 1933.

Defendant Fred J. Olson alleges: He purchased these premises from the plaintiff under a warranty deed wherein the plaintiff covenanted he was "well seized in fee;" that the plaintiff did not have good title to the premises; that on June 30, 1933 the plaintiff obtained a sheriff's deed under a foreclosure of the purchase price mortgage; but before the expiration of the period of redemption agreed to extend the

period of redemption until he could furnish good title and to accept $1,100 for his interest; that the defendant is ready and able and willing to pay the $1,100 as soon as the plaintiff furnishes good title. As a counterclaim he alleges he made improvements worth $1,000 and offers to surrender the premises to the plaintiff upon the repayment of the amount of the purchase price paid and the value of the improvements made.

Plaintiff replies that any claim which the defendant may have for damages is res judicata, having been determined in a prior action.

The trial court quieted title in the plaintiff upon condition that he pay to the defendant the sum of $555 "as and for damages for breach of covenant for title." Judgment was entered accordingly and plaintiff appeals, demanding a trial de novo.

This is not an action to recover the purchase price. In such case the defendant could recoup because of partial failure of consideration resulting from a defect of title. Williams v. Neely (C. C. A. 8th) 134 F. 1, 5, 69 L.R.A. 232; Davis v. Bean, 114 Mass. 358; Union Nat. Bank v. Pinner, 25 N. J. Eq. 495; Youngman v. Linn, 52 Pa. 413, 416. The possibility of such an action ended with the determination of the foreclosure suit, hereinafter set forth.

The facts are practically undisputed. One Krogstad received a patent to the land from the United States and owned the premises when he died. By final decree of distribution the premises were conveyed to his heirs as follows: To his widow, Anna J. Krogstad, an undivided $\frac{1}{3}$ interest; to each of their children, Caroline, Christian, Anna, Bessie, Martin, and Eliza, an undivided $\frac{1}{9}$ interest. Apparently all this was prior to July 16, 1909. On July 16, 1909 the widow and the daughters Anna, Eliza, and Bessie conveyed their entire interests to the plaintiff by warranty deed. The sons, Christian and Martin, died intestate, unmarried, and without issue, in 1902 and 1904 respectively, and their mother was their sole heir. The plaintiff claims their interest in, through, and by this deed. The daughter Caroline died and her undivided $\frac{1}{9}$ interest was decreed to her heirs as follows—to her husband Charles an undivided $\frac{1}{27}$, and to each of her children Otto, Walter, and George an undivided $\frac{2}{81}$ interest. Thereafter the husband Charles and the sons Otto and Walter conveyed their interests to the plaintiff. No conveyance of any interest of George was ever made

to the plaintiff. The plaintiff went into possession of these premises July 16, 1909. He cultivated the land, paid all of the taxes that were assessed and levied against it, and continued to reside thereon openly, notoriously, and adversely to all other persons. March 26, 1928 the plaintiff sold the land to the defendant Fred Olson for $7,250, executing and delivering a warranty deed with covenant of seisin.

There was a mortgage for $1,500 on the land. The defendant paid to the plaintiff $2,250 in cash, assumed the payment of this $1,500 mortgage and gave a second mortgage on the land to secure the remainder of the purchase price—$3,500. In this mortgage Olson agreed to pay the taxes, the interest upon both mortgages as they became due, and, that if he defaulted therein, the plaintiff could declare the whole sum due and payable and could proceed to collect by a sale of the premises. Olson further agreed to insure the buildings for at least $3,000 with loss payable to the plaintiff, and to deliver the policies to the plaintiff as further security and until the mortgage was fully paid and satisfied. The defendant then went into possession of the land in 1928 and has remained in possession ever since. The only payments which the defendant made after the receipt of the warranty deed were one year's interest of between $50 or $60, one year's taxes —$94.58—$1,400 which he received in settlement of a policy of insurance upon the barn on the premises which burned to the ground, and an additional $100. The defendant made improvements upon the place and farmed the land during all of those years—sometimes making a net profit and sometimes taking a loss. There is testimony to the effect that the fair, annual cash rental of the land was $3 per acre though defendant says cash rent for land was $1 per acre in places adjacent thereto.

Plaintiff commenced foreclosure proceedings by advertisement, which proceedings were enjoined and the plaintiff was compelled to proceed by action. In that action the plaintiff set forth Olson's failure to pay the taxes and the interest on both mortgages, declared the whole sum of the second mortgage due and payable and demanded judgment of foreclosure. Olson answered admitting the execution of the notes and second mortgage; but claimed they had been obtained by fraud and misrepresentation. At the same time he set forth a

counterclaim, based on the same state of facts claiming damages in the sum of $2,500.

The District Court found in favor of the plaintiff, adjudged foreclosure, and the premises were sold on execution sale March 16, 1932. No appeal was taken by Olson, and the sheriff's deed was duly executed after the expiration of the year of redemption.

Olson claims that just prior to the expiration of the year of redemption Anderson agreed to get marketable title, give Olson an additional year to redeem and accept $1,100 at that time for his interest in the land.

In August, 1933, Olson brought action against Anderson praying for an injunction preventing Anderson from ousting him from the land until Olson could complete negotiations in progress to mortgage the land in the sum of $3,965 out of which to pay Anderson $2,485 admitted to be due him and $1,480 to one Ellingrud. In November 1933 the parties stipulated to dismiss this injunctional proceeding "with prejudice and without costs to either party." Thereupon the plaintiff commenced this action to quiet title.

The demand for right to redeem is abandoned by defendant. He admits he cannot redeem, and at the same time insist on rescission; but urges the claimed extension merely to show that as he was given an extra year and yet cannot redeem he may now rescind.

Defendant's claim of right to rescind is not well founded. Assuming, without deciding, that one may rescind under similar circumstances, rescission to be effective must be promptly exercised upon the discovery of the facts giving grounds for rescission. The defendant learned of the defect in the title in the fall of 1933. However, he still remained in possession of the premises. In December, 1933, he made an application for a loan to the Federal Land Bank. He defied all efforts of the plaintiff to remove him and has remained in possession ever since the execution of the sheriff's deed. By temporizing the defendant has lost all right of rescission. See Comp. Laws, § 5936; Timmins v. Russell, 13 N. D. 487, 99 N. W. 48; Annis v. Burnham, 15 N. D. 577, 108 N. W. 549; Westerland v. First Nat. Bank, 38 N. D. 24, 164 N. W. 323, 7 A.L.R. 562; Bauer v. National Union F. Ins. Co. 51 N. D. 1, 198 N. W. 546.

The defendant demands that the plaintiff repay to him the $2,250

paid at the time of sale, the $1,400 paid as the proceeds of the fire insurance policies and certain other sums of money claimed to have been expended by him—in all the sum of $4,800. His right to such relief will be determined in the two main questions which arise.

There is no question but what Anderson gave his deed to the defendant in good faith, believing himself to be the owner of the premises in fee simple. The abstract of title had been examined by defendant's lawyer who told him "the title was all right."

It is undisputed the defendant lost his right to the premises because of his failure to comply with the provisions of the mortgage for $3,500. It was because of this default the second mortgage was foreclosed. The defendant did not default because there was a defect in the title to the land. He was in possession, exercised control, and so far as the plaintiff or anyone else was concerned was in undisputed possession. He litigated the foreclosure proceedings. He made no defense of defect in the title. He says now he did not know of the defect until the fall of 1933. The judgment in the foreclosure case is res judicata, so far as his title to the land is concerned. However this does not preclude him from recovering damages for the breach of covenant of seizin if there be such a breach.

There are therefore two main issues to be determined—was there a breach of covenant of seizin; and if so, what damages should the defendant recover therefor?

The trial court found that the proceeds of the insurance policies could not be charged as part of any damages to which Olson was entitled; that if the defendant could recover damages at all he could recover but a portion of the $2,250 which he paid on the purchase price at the time he received his deed.

In his warranty deed the plaintiff covenanted he was the owner in fee simple of the premises and had good right to convey the same. That he believed this to be true does not alter the fact there was a defect in the title and that the defect existed at the time that the deed was given. The covenant of seizin therefore was broken when executed, and an immediate right of action accrued to the grantee for its breach. Beulah Coal Min. Co. v. Heihn, 46 N. D. 646, 180 N. W. 787; Webb v. Wheeler, 80 Neb. 438, 114 N. W. 636, 17 L.R.A.(N.S.) 1178;

McInnis v. Lyman, 62 Wis. 191, 22 N. W. 405, 407. See note in 17 L.R.A.(N.S.) 1183. But there was a breach without eviction.

The defendant suffered no actual injury because of this defect of title —either by assertion of a superior right, or by an attempt to oust him of possession. Loss suffered is the result of his failure to live up to the contract set forth in the second mortgage.

Because of the death of the two sons, Christian and Martin, their undivided ⅔ interest in the premises vested in their mother, she being their sole heir. Proceedings contemporaneous with this case show this. Her deed to the plaintiff purported to grant property in fee simple. It conveyed all the interests in the premises she then possessed; which included the interests of the sons which had passed to her. Dickson v. Wildman, 183 F. 398 (C. C. A. 5th). The subsequent heirship proceedings merely gave her evidence of a legal title. Section 5529 of the Comp. Laws reads: "When a person purports by proper instrument to grant property in fee simple and subsequently acquires any title or claim of title thereto the same passes by operation of law to the grantee or his successors."

Thus the plaintiff by the deed from the mother had the interest of the two sons, whether we consider it as passing to the mother upon the death of the sons or coming to the plaintiff by after acquired title.

In Younger v. Moore, 155 Cal. 767, 772, 103 P. 221, 224, we have a case where the mother, in 1891, acquired an interest in her husband's estate as his widow, and her son William had a $\frac{2}{15}$ estate also. Her son died intestate in 1896 and she was his sole heir. In 1895 she gave the deed involved and the Court said: "The effect of such deed as matter of law is the same as if it were written upon the face that the grantor conveyed all the estate which he then possessed, or which he might at any time thereafter acquire." See also Danziger v. Benson, 175 Cal. 565, 166 P. 313. The case at bar is even stronger for the sons died before the mother executed her deed. The plaintiff therefore, because of his deed from the heirs of the original homesteader, was the owner of ⅚ interest in the premises; and by his deed from the husband and two children of the deceased daughter was the owner of an additional $\frac{7}{81}$ part of the premises—the remaining $\frac{2}{81}$ being held by George Colemer, a son of the deceased married daughter. All conveyances were made before Anderson deeded to Olson. George is made

a party defendant in this action, and has defaulted. This actual defect of $\frac{2}{81}$ interest however was increased on the record because there was nothing to show the devolution of the interests of the two deceased sons to their mother. The title conveyed by the plaintiff to the defendant by means of the warranty deed was not a marketable title—it lacked the $\frac{2}{81}$ interest of the son of the deceased daughter, and the completed chain of title from the deceased sons to their mother. Defendant was entitled to a marketable title—a title deducible from the record. Benson v. Shotwell, 87 Cal. 49, 25 P. 249; Turner v. McDonald, 76 Cal. 177, 18 P. 262, 9 Am. St. Rep. 189; Howe v. Coates, 97 Minn. 385, 107 N. W. 397, 4 L.R.A.(N.S.) 1170, 114 Am. St. Rep. 723; McPherson v. Schade, 149 N. Y. 16, 43 N. E. 527, 528; Batley v. Foerderer, 162 Pa. 460, 29 A. 868. This he did not have. The defendant therefore was entitled to damages at that time.

The trial court found the defendant was entitled to recover a proportionate amount of the $2250 which he had paid in cash as part of the purchase price—that is in the ratio of the defect in the title. He thus allowed the sum of $555.

While the existence of an outstanding paramount title is a sufficient breach of the covenant of seizin to enable the covenantee to maintain an action because thereof; yet he is limited in his recovery to nominal damages merely, so long as he remains in undisturbed possession of the premises conveyed by the covenant. Anderson v. Knox, 20 Ala. 156; Hencke v. Johnson, 62 Iowa, 555, 17 N. W. 766; O'Meara v. McDaniel, 49 Kan. 685, 31 P. 303; Ogden v. Ball, 38 Minn. 237, 36 N. W. 344; Morrison v. Underwood, 20 N. H. 369. In Bowne v. Wolcott, 1 N. D. 415, 48 N. W. 336, this principle was recognized and applied in a case where the breach appeared to be more serious than here. We held in that case that where the grantor was not seized of the legal title when he conveyed the land by warranty deed such covenant of seizin was broken at the time of conveyance but that "until some paramount or hostile title is in some manner asserted, or the grantee is in some manner disturbed in his possession, such breach is a mere technical breach, for which the grantee can recover nominal damages only." Unless he shows substantial loss only nominal damages can be recovered. Sayre v. Sheffield Land, Iron & Coal Co. 106 Ala. 440, 18 So. 101; Croom v. Allen, 145 Ga. 347, 89 S. E. 199; Mundt v. Com-

stock, 199 Iowa, 282, 201 N. W. 797; Hasselbusch v. Mohmking, 76 N. J. L. 691, 73 A. 961; Bardeen v. Markstrum, 64 Wis. 613, 25 N. W. 565. See note to North v. Brittain, 61 A.L.R. 6, 10. "The rule is the same that determines the damages in any other case of a breach of contract, namely, the actual damages sustained." Hartford & S. Ore Co. v. Miller, 41 Conn. 112.

While it is frequently held that the measure of damages for the breach of the covenant of seizin is the consideration paid with interest, nevertheless this rule is based on the fact that in the cases where the rule is asserted the grantee took nothing by the conveyance for the reason that the grantor had nothing to convey. In the case at bar the grantor had a substantial interest in the property conveyed; but he could not give a marketable title to the entire fee. It cannot be said that the grantee took nothing. As pointed out in Bowne v. Wolcott, 1 N. D. 415, 48 N. W. 336, supra "possession passed, and that such possession has remained undisturbed, and no hostile title has ever been in any way asserted. The record thus made would negative the idea that the grantee took nothing. It is perfectly clear that he took a very valuable interest." No reconveyance was tendered by Olson at the time of the foreclosure of the mortgage. By this foreclosure he lost whatever interest he had in the land—not by the assertion of a paramount title, but because of his own contract set forth in the mortgage and the breach thereof.

We are agreed the defendant is entitled to recover damages; but the measure of damages applied is not the correct measure here. Whatever damages the defendant suffered because of the defect he is entitled to recover. But he suffered no actual damages. His loss was not caused by the breach of the covenant of seizin. In Beecher v. Baldwin, 55 Conn. 419, 12 A. 401, 3 Am. St. Rep. 57, where the grantee was evicted from the premises in consequence of failure to pay certain notes secured by a mortgage on the land, executed at the time of conveyance, she was held entitled to recover only nominal damages for breach of the covenant of warranty on the ground that the eviction was due entirely to the grantee's fault in not paying the mortgage. As a matter of fact it would appear that this claim of defect of title is largely an afterthought. It is true the record shows some negotiations between the defendant and the Federal Land Bank to ob-

tain money for the purpose of paying the amount due on the purchase price mortgage and that such loan could not be made because of the condition of the title. But all such negotiations took place after the sheriff's deed was issued, and based on some understanding with Anderson that he would accept $1,100 for his interest in the land. Up to that time no claim was made of any defect in the title and it is clear that the failure to pay the amount due on the mortgage prior to the foreclosure proceedings was not occasioned because of any defect in title. The defect caused him no loss. Olson does not demand the right to redeem—in fact shows conclusively he cannot. He based his defense on a claimed right to rescind the original agreement expressed in the deed to him and his mortgage back. This has been settled long ago and the right no longer exists.

"For the breach of an obligation arising from contract the measure of damages—is the amount that will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." Comp. Laws, § 7146. "When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages." Comp. Laws, § 7184. All he is entitled to is nominal damages. The judgment is modified by elimination of the actual damages allowed to Olson and substituting therefor nominal damages. With this modification the judgment is affirmed.

BURKE, Ch. J., and NUESSLE, MORRIS and CHRISTIANSON, JJ., concur.